PEOPLE v POMEROY

PEOPLE v FULCHER

Docket Nos. 62831, 62832. Argued June 3, 1980 (Calendar Nos. 5, 6).—
    Decided December 22, 1982. Rehearing granted 417 Mich 1113.

James Pomeroy and Jessie Fulcher were discovered by police
    officers on separate occasions sleeping slumped over the steer-
    ing wheels of motionless, but idling, motor vehicles while
    intoxicated. They were convicted separately in the 71-B District
    Court, Richard F. Kern, J., of operating a motor vehicle while
    impaired. The Tuscola Circuit Court, Norman A. Baguley, J., in
    *Fulcher,* and Martin E. Clements, J., in *Pomeroy,* affirmed. The
    Court of Appeals, D. E. Holbrook, P.J., and Marutiak, J. (M. J.
    Kelly, J., dissenting), affirmed (Docket Nos. 77-681, 77-702). The
    defendants appeal.

    The judgments of the Court of Appeals are affirmed by an
    equally divided Court.

    Justice Ryan, joined by Justices Williams and Coleman,
    would affirm the decision of the Court of Appeals for the reason
    stated in that Court's opinion. The Court of Appeals held that
    the term "operate" is not limited to situations where the
    vehicle is being propelled, and that where an intoxicated per-
    son exercises actual bodily restraining or directing influence
    over the machinery of an automobile which would put it in
    motion, that person is in "actual physical control" of that
    vehicle and may be prosecuted under the drunk driving provi-
    sions of the Michigan Vehicle Code.

    Justice Ryan disagreed with Justice Levin's construction of
    the terms "operator" and "driver" to include a person who is
    "preparing to drive" a motor vehicle. To extend the statutory
    definitions to reach such a case amounts to amendment of the

---

REFERENCES FOR POINTS IN HEADNOTES

[1-5] 7A Am Jur 2d, Automobiles and Highway Traffic § 300.
    What constitutes driving, operating, or being in control of motor
        vehicle for purposes of driving while intoxicated statutes. 93
        ALR3d 7.
[3-5] 7A Am Jur 2d, Automobiles and Highway Traffic § 302.

statute. To add the requirement that it be shown that the defendant was "preparing to drive" introduces an element of intent which works to the advantage of the most intoxicated persons, because the more intoxicated a person is, the less likely is it that he could form the requisite intent.

Justice Levin would hold that a person who was discovered sitting in the driver's seat of a stationary motor vehicle with the motor running while his ability to drive was visibly impaired may be convicted of driving while visibly impaired where it is shown that he either had driven or was preparing to drive the vehicle.

1. The Vehicle Code separately defines "operator" and "driver". Both terms include persons who are in actual physical control of a motor vehicle. The phrase "in actual physical control" encompasses a wider range of activities than simply driving a car and suggests that "drive" and "operate" are not confined exclusively to moving vehicles. The legislative history of the code permits the inference that the phrase "in actual physical control" extends the prohibition against driving or operating a vehicle while impaired to a person in a stationary vehicle preparing to put it in motion.

2. In these cases, the triers of fact failed to consider whether the defendants were preparing to drive a vehicle, and the cases should be reversed and remanded for new trials.

Justice Kavanagh, joined by Chief Justice Fitzgerald, would reverse the convictions because in each case the defendant was asleep and the car was not moving at the time he was arrested. A sleeping person cannot be held to be presently operating a parked car.

88 Mich App 311; 276 NW2d 904 (1979) affirmed by an equally divided Court.

OPINION BY RYAN, J.

1. AUTOMOBILES — DRUNK OR IMPAIRED DRIVERS — STATIONARY VEHI-
   CLES — OPERATE — WORDS AND PHRASES.

   *The term "operate" as used in the Vehicle Code is not limited to situations in which a motor vehicle is being propelled; where an intoxicated person exercises actual bodily restraining or directing influence over the machinery of an automobile which would put the vehicle in motion, that person is in actual physical control of the vehicle and may be prosecuted under the drunk or impaired driving provisions of the code (MCL 257.36, 257.625b; MSA 9.1836, 9.2325[2]).*

2. AUTOMOBILES — DRUNK OR IMPAIRED DRIVERS — STATIONARY VEHI-
    CLES — OPERATOR — DRIVER — WORDS AND PHRASES.

   *The terms "operator" and "driver" as used in the Vehicle Code
   do not include a person who is preparing to drive a motor
   vehicle; such an expansion of the statutory definition intro-
   duces an element of intent which would work to the advantage
   of most intoxicated persons (MCL 257.13, 257.36, 257.625b;
   MSA 9.1813, 9.1836, 9.2325[2]).*

OPINION BY LEVIN, J.

3. AUTOMOBILES — DRUNK OR IMPAIRED DRIVERS — STATIONARY VEHI-
    CLES.

   *A person who is discovered sitting in the driver's seat of a
   stationary motor vehicle with the engine running while his
   ability to drive is visibly impaired may be convicted of driving
   while visibly impaired where it is shown that he either had
   driven or was preparing to drive the vehicle (MCL 257.625b,
   257.951; MSA 9.2325[2], 9.2651).*

4. AUTOMOBILES — DRUNK OR IMPAIRED DRIVERS — STATIONARY VEHI-
    CLES.

   *The prohibition against driving or operating a motor vehicle
   while impaired is not confined exclusively to moving vehicles,
   but extends to stationary vehicles where the operator is in
   actual physical control and has driven or is preparing to drive
   (MCL 257.625b, 257.951; MSA 9.2325[2], 9.2651).*

OPINION BY KAVANAGH, J.

5. AUTOMOBILES — DRUNK OR IMPAIRED DRIVERS — STATIONARY VEHI-
    CLES.

   *A person found asleep behind the wheel of a parked vehicle
   cannot be said to be presently operating a motor vehicle and, if
   intoxicated, cannot be convicted of driving while visibly im-
   paired (MCL 257.625b; MSA 9.2325[2]).*

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *Artis M. Noel,* Prosecut-
ing Attorney, and *Mary C. Smith,* Assistant Prose-
cuting Attorney, for the people.

*Henry L. Greenwood* for defendants.

RYAN, J. I would affirm the decision of the Court

of Appeals in both of these cases for the reason stated in that Court's opinion. *People v Pomeroy,* 88 Mich App 311; 276 NW2d 904 (1979).

The crux of my disagreement with my brother LEVIN is in his willingness to extend the Legislature's definition of a motor vehicle "operator" and "driver" to include a person who is "preparing to drive" a motor vehicle. That is not what the Legislature has said an "operator" or a "driver" is. The Legislature has defined "operator" in MCL 257.36; MSA 9.1836 as "every person * * * who is in actual physical control of a motor vehicle upon a highway" and a "driver" in MCL 257.13; MSA 9.1813 as "every person who drives or is in actual physical control of a vehicle". To extend those definitions to "reach" the situations presented in the cases before us is a reach of such range as to amount to an amendment of the statutes.

Whether wisely or unwisely, the Legislature has decided that it is sufficient in order to prove a violation of the drunk driving and impaired driving laws, if it be shown that a defendant was driving or was "in actual physical control of a motor vehicle" while intoxicated or visibly impaired. If upon all of the evidence produced at trial in a given case a factfinder is persuaded that a defendant is using a motor vehicle only as a shelter against the elements, and not as a motor vehicle, or is asleep behind the wheel, a verdict of not guilty should result because such a defendant will not have been a person driving or "in actual physical control of the motor vehicle" for use as a motor vehicle. In order to protect such persons from the risk of a drunk driving or impaired driving conviction, the solution is not to add to the statutes the requirement that the defendant be shown to be "preparing to drive". Aside from the

fact that the statutes simply do not permit such inventive reading, the new requirement introduces a mental element into the offenses which works to the advantage of the most intoxicated persons. The more intoxicated a person is, the less likely it is that he would or could form the requisite intent which today's new requirement introduces.

In cases such as those before us, the defendant, under my brother's "preparing to drive" requirement, would be well-advised to concede or prove that he or she was so drunk behind the wheel that it was impossible to form the requisite intent to make the preparations to drive. Intoxication may thus be a defense to drunk driving: "Your Honor, I was too drunk to even think about preparing to move the car."

I would affirm the decision of the Court of Appeals in both of these cases.

WILLIAMS and COLEMAN, JJ., concurred with RYAN, J.

LEVIN, J. These cases, consolidated on appeal, pose the question whether an intoxicated person, sitting in the driver's seat of a stopped vehicle with the motor running, can be convicted of driving while visibly impaired under the Michigan Vehicle Code.[1] Defendants seek to reverse their convictions on the ground that the statutory prohibition does not extend to stationary vehicles. I would hold that the statute does extend to a person sitting in the driver's seat of a stationary vehicle, where it is shown that the person was preparing to drive while visibly impaired.

I

In *Pomeroy,* two deputies of the Tuscola Sheriff's

---

[1] MCL 257.625b; MSA 9.2325(2).

Department were on patrol when they heard the uninterrupted blare of a car horn. The sound was coming from a car parked in front of the Cornerstone Bar in Unionville, Michigan. As they approached the car, they saw Pomeroy asleep, his body slumped against the car's steering wheel.

The deputies testified that after tapping on the car's window in an unsuccessful effort to awaken Pomeroy, one of them opened the car door and shut the engine off. The deputy then removed a beer can from between Pomeroy's legs. At this point, Pomeroy awoke, depressed the car's clutch and moved the gearshift from neutral into gear and then back again. As Pomeroy reached for the key, the deputy prevented him from doing so. The car was legally parked, and at the time the deputy entered it the heater was on.

Pomeroy's testimony did not contradict the deputies' account of the incident. However, he denied that he entered the car for the purpose of putting it into motion. He admitted that he had been drinking at the bar. He said that when he began to fall asleep there, the bartender told him that he would have to sleep elsewhere. He testified that because it was cold and he was wearing only a thin cloth coat he borrowed a friend's car keys and went out to the friend's car intending to use it as a shelter for his slumber.

At the close of evidence, the jury was instructed that it could convict Pomeroy of violating § 625b of the Vehicle Code if it found that "his ability to operate a motor vehicle was visibly impaired due to consumption of intoxicating liquor" and that while impaired he had operated a motor vehicle.

The jury was further instructed that the state might prove the element of operation if it showed that Pomeroy had been in "actual physical control of the motor vehicle". After a conviction was returned, the district court fined him $100 and placed him on one year's probation. His conviction was affirmed by the circuit court.

Fulcher was found by a police officer slumped over the steering wheel of a motionless vehicle which was straddled between a ditch and a roadway in Vassar, Michigan. The vehicle was in gear, and its engine was idling. After turning off the engine and taking it out of gear, the officer noticed that Fulcher was intoxicated and placed him under arrest for drunken driving. After a bench trial, Fulcher was convicted under § 5.15b of the Uniform Traffic Code for municipalities, the wording of which parallels that of § 625b.[2] The district court based its decision on the evidence that Fulcher was found intoxicated in a vehicle and had the ability to put the vehicle in motion. He was fined $100 and sentenced to 60 days in jail. His conviction was affirmed by the circuit court.

Defendants claim their convictions were erroneous as a matter of law. They argue that the word "operate", in the context of the Michigan Vehicle Code, is synonymous with the word "drive" and as such refers only to moving vehicles. Since neither defendant was seen driving his motor vehicle along the road, it is argued that they did not operate their motor vehicles within the meaning of the statute.

---

[2] The Uniform Traffic Code for municipalities is required by law to incorporate the drunken driving provisions of the Michigan Vehicle Code. MCL 257.951; MSA 9.2651.

The Court of Appeals was unpersuaded by this contention. It held that a person whose ability to drive is visibly impaired by alcohol can be found guilty if seen in the driver's seat of a stationary vehicle with the motor running. I agree, but only if it is shown that he either had driven or was preparing to drive the vehicle while visibly impaired.

## II

The defendants seek to restrict the meaning of the word "operate" by demonstrating that it is used interchangeably with the word "drive" in the Vehicle Code. From this it is argued that since "drive" in its normal and ordinary usage refers to moving vehicles, "operate" should be given the same meaning.

However, even if these terms are used interchangeably, the code defines them, and we are bound by its definitions. "Operator" is defined as "every person, other than a chauffeur, who is in actual physical control of a motor vehicle upon a highway".[3] "Driver" applies to "every person who drives or is in actual physical control of a vehicle".[4]

Given these definitions of "driver" and "operator", the wording of the Vehicle Code does not suggest that the words "drive" and "operate"

[3] MCL 257.36; MSA 9.1836.
[4] MCL 257.13; MSA 9.1813.

should be confined exclusively to moving vehicles.[5] The phrase "actual physical control" would appear to encompass a wider range of activities than simply driving a car and suggests that the definitions of "drive" and "operate" are not confined exclusively to moving vehicles.

This conclusion finds support in § 625 of the Vehicle Code. Section 625 applies to persons who drive under the influence of intoxicating liquor.[6] The elements of § 625 and § 625b overlap to a considerable degree. The only difference is that § 625 requires a higher level of intoxication and provides for more severe penalties than its statutory counterpart. Given that these code sections apply to the same class of activity and share the same purpose, they would appear to be *in pari materia.* Consequently, if the Legislature meant § 625 to apply to stationary vehicles, it would be reasonable to assume in the absence of any clear indication to the contrary that it meant § 625b to have a similar scope.[7]

Though the legislative history of § 625b is sparse, that is not the case with respect to § 625. Both the evolution of this law in Michigan and the records of the organization primarily responsible for drafting it, the National Conference on Street and Highway Safety, support the proposition that

---

[5] The applicability of these definitions should not turn on the grammatical form in which they appear in subsequent sections of the code. Thus, we can consider the definitions of "driver" and "operator" when defining the terms "drive" and "operate".

In 1976, shortly after the defendants were convicted, the Legislature made it clear, at least in the case of the word "operate", that its meaning paralleled that of the term "operator" by adding it to the definitional chapter of the Michigan Vehicle Code. MCL 257.35a; MSA 9.1835(1).

[6] MCL 257.625; MSA 9.2325.

[7] *Szydelko v Smith Estate,* 259 Mich 519; 244 NW 148 (1932).

the drunken driving sections of the Vehicle Code apply to individuals in stationary vehicles who are preparing to put them into motion.

The 1927 version of § 625 declared that:

"It shall be unlawful and punishable as provided in section fifty-four of this act for any person * * * who is under the influence of intoxicating liquor or narcotic drugs to *drive* any vehicle upon any highway within this state."[8] (Emphasis added.)

In 1939, the Legislature added the phrase "or be in actual physical control" after the word "drive".[9]

The addition of the phrase "in actual physical control" to the Vehicle Code's drunken driving section reflects a corresponding change made in the 1938 revision of the Uniform Vehicle Code's § 49, upon which Michigan's § 625 was modeled. The Uniform Vehicle Code was drafted under the auspices of the National Conference on Street and Highway Safety in 1926.[10] It was first enacted by

---

[8] 1927 PA 318, § 3.

[9] 1939 PA 318, § 3. In 1949, the Legislature amended this section once again. The phrase "or be in actual physical control" was deleted from this section, but at the same time the term "driver" was added to the definitional chapter of the Vehicle Code. 1949 PA 300, § 13. "Driver" was defined and continues to be defined today as "every person who drives or is in actual physical control of a vehicle". 1949 PA 300, § 13. At the time the defendants were convicted, these were the relevant amendments to what is now § 625.

The subsequent deletion of the "actual physical control" phrase, from § 625 should not be viewed as a demonstration that the Legislature had second thoughts and intended to limit the scope of the offense to vehicles in motion. The simultaneous placement of the word "driver" in the definitional chapter of the Vehicle Code more than likely evinced an intent to give an expansive meaning to the word driver and its variants in *every* section of the code.

[10] The first Uniform Vehicle Code was drafted by the Committee on Uniformity of Laws and Regulations of the National Conference on Street and Highway Safety, an association composed of delegates appointed by the governors of 43 states and representatives of public and private organizations interested in traffic safety, which was

Michigan in 1927. In later years Michigan has on numerous occasions amended its law to conform to revisions of the Uniform Vehicle Code.

Though the source materials relating to the 1938 revision of the Uniform Vehicle Code are not extensive, it appears that the addition of this phrase to § 49 was calculated to extend its reach to stationary vehicles. The later enactment of this revision by the Michigan Legislature implies an endorsement of the position taken by the revisers of the Uniform Vehicle Code.[11]

The 1938 revision of the Uniform Vehicle Code occurred in three stages. First, an informal survey of the members of the National Conference on Street and Highway Committee on Uniform Laws was conducted and a list of proposed revisions was compiled. Second, the list with accompanying explanatory comments was circulated to the committee's members, who were asked to criticize the proposed revisions. Finally, the committee met in Washington, D.C., on July 11, 12 and 14, 1938, to debate the proposed revisions and to vote on their adoption.

The first reference to this change is to be found in the list of proposed revisions. It was proposed that § 49:

---

formed at the behest of the then United States Secretary of Commerce, Herbert Hoover. Even though the National Conference on Street and Highway Safety stopped meeting in 1934, this committee has continued to meet and revise the Uniform Vehicle Code. It is now known as the National Committee on Uniform Traffic Laws and Ordinances—a non-profit organization funded from government and private donations. Traffic Laws Annotated 818, pp 818-820 (1972).

[11] A long line of Michigan decisions hold that where a statute is borrowed from another state, the prior construction it has received in that state should also be incorporated into Michigan law. *In re Cress Estate,* 335 Mich 551; 56 NW2d 380 (1953); *In re Rackham Estate,* 329 Mich 493; 45 NW2d 273 (1951); *Lawrence Bakery Co v Unemployment Compensation Comm,* 308 Mich 198; 13 NW2d 260 (1944). The principle which underlies these decisions is equally relevant where questions of statutory construction turn on the drafters' intent but the statute was not drafted in Michigan.

"Make clear that a driver, under the influence, in the driver's seat and preparing to operate, but with the vehicle standing still, is violating this section."[12]

The comments which followed provoked almost no criticism of this suggestion. In fact, at least one respondent thought that the proposal restated rather than departed from prior law.[13] Subsequently, at the Washington, D.C., meeting, the committee agreed to this revision and chose the phrase "be in actual physical control" to effectuate its intent. In a report issued shortly after its deliberations concluded, the committee once again stated:

"[T]he section is to be broadened so that a person under the influence of intoxicating liquor does not need actually to be driving, provided he is 'in actual physical control' of a vehicle. The idea which involved a difficult drafting task is intended to cover a 'drunk' leaving a roadhouse and insisting on driving, and to enable police to prevent his doing so."

I conclude that § 625 was designed to reach situations where intoxicated drivers prepare to put motor vehicles into motion. Since § 625b was intended to have a similar scope, I find that it was also designed to reach drivers preparing to put their motor vehicles into motion.

### III

In the cases of defendants Pomeroy and Fulcher, there is no need at this time to determine whether the evidence against them was sufficient to support

---

[12] Proposal for change in Uniform Vehicle Code, April 25, 1938.

[13] Resume of More Important Changes in the Uniform Vehicle Code and the Model Traffic Ordinances, July 16, 1938.

their convictions, because in both cases the trier of fact did not consider whether the defendant was preparing to drive the vehicle.[14] In view of my opinion that a person found sitting in the driver's seat of a stationary vehicle cannot be convicted unless it is shown that he was in actual physical control of the vehicle while visibly impaired and either had driven or was preparing to drive, I would reverse and remand for new trial in both cases.

KAVANAGH, J. *(for reversal).* James Pomeroy was charged with violation of MCL 257.625b; MSA 9.2325(2), which then read:

"A person shall not operate a vehicle upon a highway or any other place open to the general public, including an area designated for the parking of motor vehicles, within this state when, due to consumption of intoxicating liquor, or a controlled substance, or a combination thereof, the person has visibly impaired his ability to operate the vehicle."

The evidence at trial disclosed that two deputy sheriffs discovered Pomeroy asleep and slumped over the steering wheel of a car. The car was legally parked in front of the Cornerstone Bar on Bay Street in Unionville. Pomeroy's head was resting against the horn, which was blowing. The car's standard transmission was in neutral and the motor and heater were on, but the lights were off.

One of the deputies attempted to awaken Pomeroy by tapping on the window. Unsuccessful, he opened the door, shut off the engine, and removed

[14] In *Fulcher,* the judge said that he did not consider the circumstantial evidence that the defendant had been driving and convicted the defendant solely because he was found in the driver's seat of a vehicle with the motor running and that he did not consider whether the defendant was preparing to drive.

a beer can from between Pomeroy's legs. Pomeroy then woke up, pressed the clutch, and moved the gearshift down through the gears and back to neutral. He reached for the key to restart the motor, but the deputy prevented him from doing so.

The deputies testified that Pomeroy did not actually move the car. Pomeroy testified that he had been drinking that day at the Cornerstone Bar. When he started to fall asleep, the bartender told him he could not sleep in the bar. Pomeroy had then asked a friend for the keys to his car so he could "go to sleep". He had turned on the car's motor and heater because it was cold. He denied any intention to actually drive the car; the friend had said he would wake Pomeroy when he came out of the bar.

The trial judge instructed the jury "a person operates a motor vehicle when he is in actual, physical control of a motor vehicle". The jury found Pomeroy guilty of driving while impaired in violation of the state law.

Both the circuit court and the Court of Appeals affirmed.

Jessie Fulcher was charged with a violation of § 5.15b of the Uniform Traffic Code for Cities, Townships, Villages:

"A person shall not operate a vehicle on a highway, or street, or any other place open to the general public, including an area designated for the parking of motor vehicles, when, due to the consumption of intoxicating liquor * * * he has visibly impaired his ability to operate the vehicle. * * *" 1979 AC, R 28.1415b.

A Vassar city police officer found Fulcher's car with the rear end in a ditch and the front end on the roadway. The car's automatic transmission

was in "drive" and the engine was idling. Fulcher was slumped over the wheel, but his foot was off the accelerator. The police officer had to shake Fulcher several times and shout at him before Fulcher finally woke up. Tire tracks were furrowed in the ground, following the path of the car into the ditch.

Fulcher was tried without a jury. The trial judge who found him guilty of driving while impaired said in part:

"[W]hen I look at the definition of a driver which says that it's a person who is [in] control of a motor vehicle [by] that I mean that I'm deciding that when a person is in control of a motor vehicle and has access to all of the gears and levers to put that thing in motion and he's on a public highway and he's under the influence, he is driving. I am not deciding this case on the basis that because he was in a car and there were tracks leading off the highway in the ditch, back on the highway that he was driving it earlier. My ruling is he was operating that vehicle when the officer came there and looked in the window, because I think that any person who is in a car on a public highway, intoxicated, in control of a vehicle, motor running, ignition on, in gear must be such a threat to the people of this state as anybody who is actually on the road."

The circuit court and the Court of Appeals affirmed.

In both cases, criminal liability is predicated on operating a motor vehicle. The Court of Appeals majority said:

"[W]here an intoxicated person exercises actual bodily restraining or directing influence over the machinery of an automobile which would put it in motion, that person is in 'actual physical control' of that vehicle and may be prosecuted under the drunk driving provisions

of the Vehicle Code." 88 Mich App 311, 319; 276 NW2d 904 (1979).

Judge KELLY, concurring as to *Fulcher* and dissenting as to *Pomeroy,* said:

"Every inference derived from this testimony [at Pomeroy's trial] suggests that defendant had no intention to drive the car. Similarly, the people's evidence, that defendant pressed the clutch, moved the gearshift to neutral and reached for the key to start the car after the arresting officer had turned the car off, is as consistent with turning on the heater as it is with driving the car. Under the 'actual physical control' definition adopted by the majority, defendant's conduct in simply turning on the car's ignition in order to operate its heater constituted operation of a motor vehicle, and thus, subjected him to the penalties of drunk driving statutes. This conduct, in my opinion, was not intended to be proscribed by the drunk driving statutes. I would reverse.

"As to the companion case, *Fulcher,* I concur in the majority's result although for a different reason. The majority affirms Fulcher's conviction for driving while visibly impaired on the basis of its definition of the statutory term 'operate'. I would affirm his conviction, not for the reason that his conduct constituted 'actual physical control', but because I believe that the circumstantial evidence presented below was sufficient to permit the trial court, sitting as trier of fact, to reasonably infer that defendant had driven while visibly impaired, even though the arresting officer had not observed defendant driving the car." 88 Mich App 322.

We agree with Judge KELLY in *Pomeroy* that the evidence will not support a conviction. In *Fulcher,* we disagree, but his dissent illumines the problem. That the trier of fact could reasonably have inferred that Fulcher had driven while visibly impaired is arguable. But the trier of fact expressly eschewed that inference and held that the defen-

dant was operating the vehicle at the time of his arrest. Because the defendant was asleep and the car was not moving at that time such a holding is untenable. A sleeping person cannot be held to be presently operating a parked car.

The charges in these cases are misdemeanors. The arresting officer in each case found the defendant asleep. While circumstances might support an inference that the defendant in such a case at some prior time had driven on the highway when his ability was impaired and so support a conviction on this charge, because the offense could not have then been committed in the presence of the arresting officer, a warrantless arrest might not withstand objection.

There was no objection here, however, so we do not decide that issue.

In *Pomeroy* the evidence is insufficient to support the conviction so it is set aside and the defendant ordered discharged.

In *Fulcher* on account of the error in holding that a sleeping person was presently operating the car the conviction is. reversed and the matter remanded for a new trial.

Fitzgerald, C.J., concurred with Kavanagh, J.