PEOPLE v POMEROY (ON REHEARING)

PEOPLE v FULCHER (ON REHEARING)

Docket Nos. 62831, 62832. Originally argued June 3, 1980 (Calendar Nos. 5, 6). Resubmitted on briefs October 6, 1983 (Calendar Nos. 18, 19).—Decided September 18, 1984.

James Pomeroy and Jessie Fulcher were discovered by police officers on separate occasions sleeping slumped over the steering wheels of motionless, but idling, motor vehicles while intoxicated. They were convicted separately in the 71-B District Court, Richard F. Kern, J., of operating a motor vehicle while impaired. The Tuscola Circuit Court, Norman A. Baguley, J., in *Fulcher,* and Martin E. Clements, J., in *Pomeroy,* affirmed. The Court of Appeals, D. E. Holbrook, P.J., and Marutiak, J. (M. J. Kelly, J., dissenting), affirmed (Docket Nos. 77-681, 77-702). The defendants appeal.

In an opinion by Justice Kavanagh, joined by Justices Ryan, Brickley, and Cavanagh, the Supreme Court *held:*

A person who is asleep at the wheel of a motionless car cannot be held to be presently operating the vehicle while sleeping so as to support a conviction of operating a vehicle while visibly impaired at the time of the arrest. Criminal liability is predicated on operating a motor vehicle. In these cases, the vehicles were motionless and the drivers were asleep at the time of arrest, circumstances not addressed by the statute. Certainly, the defendants were not operating their motionless vehicles at the time of their arrests. In Pomeroy's case, no evidence was offered that he had earlier driven while visibly impaired. In Fulcher's case, there was circumstantial evidence that he had driven earlier while visibly impaired, but the trial judge expressly predicated his finding of guilt upon the circumstances obtaining at the time of his arrest.

Reversed.

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 7A Am Jur 2d, Automobiles and Highway Traffic § 300.

What constitutes driving, operating, or being in control of motor vehicle for purposes of driving while intoxicated statutes. 93 ALR3d 7.

Justice Levin, joined by Chief Justice Williams and Justice Boyle, dissented. An intoxicated person who is in actual physical control of a stationary motor vehicle may be convicted of operating the vehicle while visibly impaired. Actual physical control includes use of a vehicle as a motor vehicle short of driving, including preparing to use the vehicle as a motor vehicle.

1. The Vehicle Code defines "operator" to be a person who is in actual physical control of a motor vehicle. "Driver" is defined as a person who drives *or* is in actual physical control of a vehicle. The use of the word "or" indicates an intent to apply the phrase "actual physical control" to a wider range of activities than driving a vehicle. The legislative history of the code, the statutory definitions of "driver" and "operator", and construction of similar statutes in other states is persuasive that "actual physical control" extends to stationary vehicles.

2. The prohibition of the statute is aimed at the use of the vehicle as a motor vehicle. Actual physical control includes use of a vehicle short of driving. If there is evidence that the defendant was preparing to use the vehicle as a motor vehicle, the jury should be instructed that it may find that the defendant was in "actual physical control". But where the theory of defense, supported by evidence, is that the defendant may only have been using the vehicle as a shelter and not as a motor vehicle, the jury should be instructed that he was not in actual physical control and should be acquitted. The focus of the trial and of the instructions to the jury should be on what the defendant did rather than on what he intended.

3. In *Pomeroy,* the only reasonable inference to be drawn from the evidence was that the defendant, although in a motor vehicle with the engine running, was using the vehicle only as a shelter, not as a motor vehicle. Fulcher had placed the automobile in gear; it was not moving forward because it had come to rest in a ditch. His inability to stay awake at the wheel or to keep his foot on the accelerator does not require a finding that he was not in actual physical control. The evidence would have permitted the judge to infer that he had driven or used the vehicle as a motor vehicle.

88 Mich App 311; 276 NW2d 904 (1979) reversed.

OPINION OF THE COURT

1. AUTOMOBILES — DRUNK OR IMPAIRED DRIVERS — STATIONARY VEHICLES.

A person who is asleep at the wheel of a motionless car cannot be

held to be presently operating the vehicle while sleeping so as to support a conviction of operating a vehicle while visibly impaired at the time of the arrest (MCL 257.625b; MSA 9.2325[2]).

DISSENTING OPINION BY LEVIN, J.

2. AUTOMOBILES — DRUNK OR IMPAIRED DRIVERS — STATIONARY VEHICLES.

*The prohibition against driving or operating a motor vehicle while impaired is aimed at the use of a vehicle as a motor vehicle; if there is evidence that the defendant was behind the wheel, at the controls, and ready to use the vehicle as a motor vehicle, the jury should be instructed that it may find that the defendant was in "actual physical control"; but where the theory of defense, supported by evidence, is that the defendant may only have been using the vehicle as a shelter the jury should be instructed that if he was using the vehicle only as a shelter and not as a motor vehicle he was not in actual physical control and should be acquitted (MCL 257.625b, 257.951; MSA 9.2325[2], 9.2651).*

3. AUTOMOBILES — DRUNK OR IMPAIRED DRIVERS — STATIONARY VEHICLES.

*An intoxicated person who is in actual physical control of a stationary motor vehicle may be convicted of operating the vehicle while visibly impaired; actual physical control includes use of a vehicle as a motor vehicle short of driving, including preparing to use the vehicle as a motor vehicle (MCL 257.625b, 257.951; MSA 9.2325[2], 9.2651).*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Artis M. Noel,* Prosecuting Attorney, and *Mary C. Smith,* Assistant Attorney General, for the people.

*Drunk Driving Defense, P.C. (by Henry L. Greenwood),* for the defendants.

ON REHEARING

KAVANAGH, J. The judgments of the Court of Appeals in these consolidated cases were affirmed by an equal division of this Court. *People v Pom-*

*eroy,* 415 Mich 328; 329 NW2d 697 (1982). The cases were submitted for rehearing, which we granted. 417 Mich 1113.

These cases present the question whether an intoxicated person who is asleep in the driver's seat of a motionless vehicle is "operat[ing] a vehicle", within the meaning of MCL 257.625b; MSA 9.2325(2).

We hold that under any reasonable interpretation of the phrase "operate a vehicle", a person sleeping in a motionless car cannot be held to be presently operating a vehicle while sleeping.

In each case, the defendant was arrested while asleep in his stationary car. The evidence at Pomeroy's trial disclosed that two deputy sheriffs discovered him asleep and slumped over the steering wheel of a car. The car was legally parked in front of the Cornerstone Bar on Bay Street in Unionville. Pomeroy's head was resting against the horn, which was blowing. The car's standard transmission was in neutral and the motor and heater were on, but the lights were off.

One of the deputies attempted to awaken Pomeroy by tapping on the window. Unsuccessful, he opened the door, shut off the engine, and removed a beer can from between Pomeroy's legs. Pomeroy then woke up, pressed the clutch, and moved the gearshift down through the gears and back to neutral. He reached for the key to restart the motor, but the deputy prevented him from doing so.

The deputies testified that Pomeroy did not actually move the car. Pomeroy testified that he had been drinking that day at the Cornerstone Bar. When he started to fall asleep, the bartender told him he could not sleep in the bar. Pomeroy

had then asked a friend for the keys to his car so
he could "go to sleep". He had turned on the car's
motor and heater because it was cold. He denied
any intention to actually drive the car; the friend
had said he would wake Pomeroy when he came
out of the bar.

The trial judge instructed the jury that "a per-
son operates a motor vehicle when he is in actual,
physical control of a motor vehicle". The jury
found Pomeroy guilty of driving while impaired in
violation of the state law.

Both the circuit court and the Court of Appeals
affirmed.

A Vassar city police officer found Fulcher's car
with the rear end in a ditch and the front end on
the roadway. The car's automatic transmission
was in "drive" and the engine was idling. Fulcher
was slumped over the wheel, but his foot was off
the accelerator. The police officer had to shake
Fulcher several times and shout at him before
Fulcher finally woke up. Tire tracks were fur-
rowed in the ground, following the path of the car
into the ditch.

Fulcher was tried without a jury. The trial judge
who found him guilty of driving while impaired
said in part:

"[W]hen I look at the definition of a driver which says
that it's a person who is [in] control of a motor vehicle
[by] that I mean that I'm deciding that when a person
is in control of a motor vehicle and has access to all of
the gears and levers to put that thing in motion and
he's on a public highway and he's under the influence,
he is driving. I am not deciding this case on the basis
that because he was in a car and there were tracks
leading off the highway in the ditch, back on the
highway that he was driving it earlier. My ruling is he
was operating that vehicle when the officer came there
and looked in the window, because I think that any

person who is in a car on a public highway, intoxicated, in control of a vehicle, motor running, ignition on, in gear must be such a threat to the people of this state as anybody who is actually on the road."

The circuit court and Court of Appeals affirmed.

In both cases, criminal liability is predicated on operating a motor vehicle. Pomeroy was convicted under § 625b, while Fulcher was convicted under § 5.15b of the Uniform Traffic Code for municipalities, MCL 257.951; MSA 9.2651, the wording of which parallels § 625b. Section 625b(1) then provided:

"A person shall not operate a vehicle upon a highway or any other place open to the general public, including an area designated for the parking of motor vehicles, within this state when, due to consumption of intoxicating liquor, or a controlled substance, or a combination thereof, the person has visibly impaired his ability to operate the vehicle".

The Legislature has defined an operator as one who is in "actual physical control" of a motor vehicle.

" 'Operator' means every person, other than a chauffeur, who is in actual physical control of a motor vehicle upon a highway." MCL 257.36; MSA 9.1836.

Here the car was motionless and the driver was asleep at the time of his arrest in each case. We do not read this statute as addressing this circumstance.

If the car had been in motion, the person in the driver's seat might have been found to be "operating" it even though he asserted that he was asleep.

If the person in the driver's seat had been awake, he might have been found to have been in such physical control of the car as to support a conclusion that he was operating it even if the car was motionless.

A sleeping person is seldom operating anything. Certainly these sleeping persons were not operating their motionless cars at the time of their arrests.

In each case, the defendant was arrested while asleep at the wheel of a stationary car. The question before the trier of fact was whether the defendant was guilty of operating a vehicle while visibly impaired at the time of his arrest. At Pomeroy's trial, no evidence was offered that he had earlier driven while visibly impaired. At Fulcher's trial, there was circumstantial evidence that he had driven earlier while visibly impaired. While in another case such evidence might have been sufficient, the trial judge, sitting as trier of fact, expressly predicated his finding of guilt upon the circumstances obtaining at the time of Fulcher's arrest.

The evidence on the element of operating a vehicle was, accordingly, insufficient to sustain a conviction in each case. The convictions are reversed. Retrial is barred upon the principles stated in *People v Hampton*, 407 Mich 354; 285 NW2d 284 (1979), and *Jackson v Virginia*, 443 US 307; 99 S Ct 2781; 61 L Ed 2d 560 (1979).

Reversed.


RYAN, BRICKLEY, and CAVANAGH, JJ., concurred with KAVANAGH, J.


LEVIN, J. The question presented in these cases,

consolidated on appeal,[1] is whether an intoxicated person, sitting in the driver's seat of a stationary vehicle with the motor running, is driving while visibly impaired within the meaning of § 625b of the Michigan Vehicle Code.[2] We hold that the prohibition of the statute extends to a visibly impaired driver who is "in actual physical control"[3] of a stationary vehicle.

In *Pomeroy* there was not sufficient evidence that the defendant was "in actual physical control of a vehicle". In *Fulcher* there was sufficient evidence.

# I

In *Pomeroy,* two deputy sheriffs discovered James Michael Pomeroy asleep and slumped over the steering wheel of an automobile. The automobile was legally parked in front of the Cornerstone Bar on Bay Street in Unionville. Pomeroy's head was resting against the horn, which was blowing. The automobile's standard transmission was in neutral and the motor and heater were on, but the lights were off. One of the deputies testified that he attempted to awaken Pomeroy by tapping on the window. Unsuccessful, he opened the door, shut off the engine, and removed a beer can from

[1] This Court first addressed the issues in these cases in *People v Pomeroy,* 415 Mich 328; 329 NW2d 697 (1982). Justice RYAN, joined by Justices WILLIAMS and COLEMAN, would have affirmed the convictions in both cases. Justice KAVANAGH, joined by Justice FITZGERALD, would have reversed the Court of Appeals in both cases and remanded for a new trial in *Fulcher.* I wrote that I would have remanded for a new trial in both cases. The cases are now before this Court on rehearing.

[2] Pomeroy was convicted under § 625b of the Michigan Vehicle Code, MCL 257.625b; MSA 9.2325(2). Fulcher was convicted under § 5.15b of the Uniform Traffic Code for municipalities, MCL 257.951; MSA 9.2651, the wording of which parallels that of § 625b.

[3] MCL 257.13; MSA 9.1813, MCL 257.37; MSA 9.1837.

between Pomeroy's legs. Pomeroy then woke up, depressed the clutch pedal, and moved the gearshift down through the gears and back to neutral. He reached for the key to restart the motor, but the deputy prevented him from so doing. The deputies also testified that Pomeroy did not actually move the automobile.

Pomeroy testified that he had been drinking at the Cornerstone Bar. When he started to fall asleep, the bartender told him he could not sleep in the bar. Pomeroy had then asked a friend for the keys to his automobile so that he could "go to sleep"; the friend had said he would wake Pomeroy when he came out of the bar. Pomeroy said that he turned on the motor and heater because it was cold. He denied that he had started the automobile with the purpose of actually driving it.

At the close of the evidence, the trial judge instructed the jury that it could convict Pomeroy of violating § 625b of the Michigan Vehicle Code if it found that "his ability to operate a motor vehicle was visibly impaired due to consumption of intoxicating liquor" and that while impaired he had operated a motor vehicle. The judge further instructed that the people might prove the element of operation by showing that Pomeroy had been in "actual physical control of the motor vehicle". The jury returned a verdict of guilty. Pomeroy was fined $100 and placed on one year's probation. Both the circuit court and the Court of Appeals affirmed.

In *Fulcher,* a Vassar city police officer found Jessie Ben Fulcher's automobile with the rear end in a ditch and the front end on the roadway. The vehicle's automatic transmission was in "drive" and the engine was idling. Fulcher was slumped over the wheel, but his foot was off the accelerator.

The police officer shook Fulcher several times and shouted at him before Fulcher woke up. Tire tracks were furrowed in the ground, marking the path of the automobile into the ditch.

Fulcher was tried without a jury. The judge found him guilty of driving while impaired.[4] Both the circuit court and the Court of Appeals affirmed.

## II

Section 625b of the Michigan Vehicle Code provides that "[a] person shall not operate a vehicle upon a highway or any other place open to the general public, including an area designated for the parking of vehicles * * * when, due to the consumption of an intoxicating liquor * * * the person has *visibly impaired his * * * ability to operate the vehicle*".[5] (Emphasis supplied.) The term "operate" is not defined, but § 36 of the Michigan Vehicle Code states that " 'Operator' means every person, other than a chauffeur, who is in actual physical control of a motor vehicle upon a highway".[6]

The first question is whether to be in "actual

---

[4] The judge stated:

"[W]hen I look at the definition of a driver which says that it's a person who is [in] control of a motor vehicle [by] that I mean that I'm deciding that when a person is in control of a motor vehicle and has access to all of the gears and levers to put that thing in motion and he's on a public highway and he's under the influence, he is driving. I am not deciding this case on the basis that he was in a car and there were tracks leading off the highway in the ditch, back on the highway that he was driving it earlier. My ruling is he was operating that vehicle when the officer came there and looked in the window, because I think that any person who is in a car on a public highway, intoxicated, in control of a vehicle, motor running, ignition on, in gear must be such a threat to the people of this state as anybody who is actually on the road."

[5] MCL 257.625b; MSA 9.2325(2).

[6] MCL 257.36; MSA 9.1836.

physical control of a motor vehicle" a person must put the vehicle in motion, or whether the Legislature intended to cover a broader range of activities. The defendants contend that because the word "drive", in its normal and ordinary usage, refers to moving vehicles, and because the Michigan Vehicle Code uses the words "drive" and "operate" interchangeably, § 625b should not extend to stationary vehicles. Their contention, however, is at odds with the definition of the word "driver", with the case law in other states interpreting the phrases "operate" and "actual physical control" in similar statutes, and with the history of the Michigan Vehicle Code.

## A

Section 13 of the Michigan Vehicle Code defines "driver" as "every person who drives *or* is in actual physical control of a vehicle".[7] (Emphasis supplied.) The use of the word "or" indicates that "actual physical control" has a different meaning from the word "drives". Even if the word "drives" is confined exclusively to moving vehicles, the phrase "actual physical control" appears to encompass a wider range of activities.

## B

A review of the decisions in other states indicates that the term "operating", as used in statutes prohibiting the operation of a vehicle while intoxicated, has generally been regarded as having a meaning broader than the term "driving".[8]

---

[7] MCL 257.13; MSA 9.1813.

[8] Anno: *What Constitutes Driving, Operating, or Being in Control of Motor Vehicle for Purposes of Driving While Intoxicated Statute or Ordinance,* 93 ALR3d 7, 16.

Courts have generally recognized that a person may operate a vehicle without driving it.[9]

A number of states have statutes that, like Michigan's, prohibit "being in actual physical control" of a motor vehicle while intoxicated.[10] Courts in those states have construed the term "actual physical control", like the term "operating", as not requiring movement.[11]

## C

The legislative history of the Michigan Vehicle Code similarly indicates that the prohibition extends to stationary vehicles.

Section 625 proscribes driving under the influence of intoxicating liquor. The elements of § 625 and § 625b overlap to a considerable degree. The only difference is that § 625 requires a higher level of intoxication and provides for more severe penalties than its counterpart. Given that these code

[9] *Jacobson v State,* 551 P2d 935, 937 (Alas, 1976) ("As a general proposition it appears that 'to operate' includes a larger class of activities than 'to drive'. While one who drives a vehicle must necessarily in that process operate it, the reverse is not necessarily so."); *McDuell v State,* 231 A2d 265, 267 (Del, 1967) ("[T]he term 'driving' is encompassed within the term 'operating'; but the reverse is not necessarily so."); *Thomas v State,* 277 Md 314, 317-318; 353 A2d 256 (1976) ("[T]he term 'operate' is generally regarded as being broader than the word 'drive.' "). See also *Ferguson v State,* 198 Miss 825; 23 So 2d 687 (1945).

[10] Arizona, Arkansas, Illinois, Maryland, Missouri, Montana, Oklahoma, South Dakota, and Utah all appear to have such statutes. See 93 ALR3d 7.

[11] 93 ALR3d 7, 18; see also *State v Ruona,* 133 Mont 243, 248; 321 P2d 615 (1958) ("[M]ovement of the vehicle is unnecessary * * * under this provision of the statute."); *Kansas City v Troutner,* 544 SW2d 295, 300 (Mo App, 1976) *("[A]ctual physical control* of a vehicle results, even though the machine merely stands motionless"). See also *State v Ghylin,* 250 NW2d 252 (ND, 1977) (defendant convicted; vehicle motionless in a ditch); *Hughes v State,* 535 P2d 1023 (Okla Crim App, 1975) (defendant convicted; vehicle motionless at a 90-degree angle across the roadway).

sections apply to the same class of activity and share the same purpose, we are persuaded that their scope is coextensive.[12]

Section 625, as revised in 1927, made it unlawful for any person "who is under the influence of intoxicating liquor or narcotic drugs to *drive* any vehicle upon any highway within this state".[13] (Emphasis added.) In 1939, the Legislature added the phrase "or be in actual physical control" after the word "drive".[14]

The addition of the phrase "in actual physical control" reflects a corresponding change made in the 1938 revision of § 49 of the Uniform Vehicle Code, upon which § 625 was modeled.[15] It appears that the addition of "in actual physical control" to § 49 was designed to extend its reach to persons

---

[12] Cf. *Szydelko v Smith Estate,* 259 Mich 519; 244 NW 148 (1932).

[13] 1927 PA 318, § 3.

[14] 1939 PA 318, § 3. In 1949, the Legislature amended this section once again. The phrase "or be in actual physical control" was deleted from this section, but at the same time the term "driver" was added to the definitional chapter of the Vehicle Code. "Driver" was defined and continues to be defined today as "every person who drives or is in actual physical control of a vehicle". 1949 PA 300, § 13. At the time the defendants were convicted, these were the relevant amendments to what is now § 625.

The 1949 deletion of the "actual physical control" phrase from § 625 does not indicate that the Legislature intended to limit the scope of the offense to vehicles in motion. The simultaneous placement of the word "driver", defined as "every person who drives or is in actual physical control of a vehicle" (see text accompanying fn 7), in the definitional chapter of the Vehicle Code evinced a legislative intent to give an expansive meaning to the word driver and its variants in *every* section of the code.

[15] The Uniform Vehicle Code was drafted in 1925 by the Committee on Uniformity of Laws and Regulations of the Second National Conference on Street and Highway Safety. Even though the National Conference on Street and Highway Safety ceased meeting in 1934, this committee has continued to meet and revise the Uniform Vehicle Code. It is now known as the National Committee on Uniform Traffic Laws and Ordinances—a nonprofit organization funded by government and private donations. Traffic Laws Annotated, pp 818-820 (1972).

The Uniform Vehicle Code was first enacted by Michigan in 1927. See fn 13.

preparing to drive stationary vehicles. The later enactment of this revision by the Legislature implies an adoption of the construction intended by the revisers of the Uniform Vehicle Code.[16]

The 1938 revision of the Uniform Vehicle Code occurred in three stages. First, an informal survey of the members of the National Conference on Street and Highway Safety's Committee on Uniform Laws was conducted and a list of proposed revisions was compiled. Second, the list with accompanying explanatory comments was circulated to the committee's members, who were asked to criticize the proposed revisions. Finally, the committee met in Washington, D.C., on July 11, 12, and 14, 1938, to debate the proposed revisions and to vote on their adoption.

The first reference to this change is found in the list of proposed revisions. It was proposed that § 49 "[m]ake clear that a driver, under the influence, in the driver's seat and preparing to operate, but with the vehicle standing still, is violating this section".[17] This suggestion evoked almost no criticism in the comments that followed; at least one respondent thought that the proposal restated rather than departed from prior law.[18] Subsequently, at the Washington, D.C., meeting, the committee agreed to this revision and chose the phrase "be in actual physical control" to effectuate its intent. In a report issued shortly after its deliberations concluded, the committee once again

---

[16] This Court has held that where a statute is borrowed from another state, a prior construction in that state may be incorporated into Michigan law. *In re Cress Estate,* 335 Mich 551; 56 NW2d 380 (1953); *In re Rackham Estate,* 329 Mich 493; 45 NW2d 273 (1951); *Lawrence Baking Co v Unemployment Compensation Comm,* 308 Mich 198; 13 NW2d 260 (1944).

[17] Proposal for change in Uniform Vehicle Code, April 25, 1938.

[18] Resumé of More Important Changes in the Uniform Vehicle Code and the Model Traffic Ordinances, July 16, 1938.

stated that "the section is to be broadened so that a person under the influence of intoxicating liquor does not need actually to be driving, provided he is 'in actual control' of a vehicle. The idea which involved a difficult drafting task is intended to cover a 'drunk' leaving a roadhouse and insisting on driving, and to enable police to prevent his doing so."

The legislative history of the Michigan Vehicle Code, the statutory definitions of the words "driver" and "operator", and the case law in other °states construing similar statutes persuade us that § 625b extends to stationary vehicles. That determination, however, does not answer the difficult questions of what "actual physical control" means and whether the defendants in the instant cases were in "actual physical control of a vehicle".[19]

### III

Pomeroy and Fulcher were in the drivers' seats of their automobiles, behind the steering wheels, and had turned on the motors. Pomeroy did not put the automobile in gear, and did not attempt to

---

[19] Courts in other states have defined in diverse ways and in various contexts the term "actual physical control". Some courts have declared that it means existing or present bodily restraint, directing influence, domination or regulation of any vehicle. *State v Ruona,* 133 Mont 243; 321 P2d 615 (1958); *Kansas City v Troutner,* 544 SW2d 295 (Mo App, 1976); *State v Ghylin,* 250 NW2d 252 (ND, 1977); *Parker v State,* 424 P2d 997 (Okla Crim App, 1967); *Commonwealth v Kloch,* 230 Pa Super 563; 327 A2d 375 (1974); *State v Bugger,* 25 Utah 2d 404; 483 P2d 442 (1971). One court has defined it as the management of the movement of the machinery of a motor vehicle or management of the movement of the vehicle itself. *Commonwealth v Riehl,* 23 Pa D & C 110 (1935). A third definition requires that a person be in the driver's seat of the vehicle, behind the steering wheel, in possession of the ignition key, and in such condition that he is physically capable of starting the engine and causing the vehicle to move. *Cincinnati v Kelley,* 47 Ohio St 2d 94; 351 NE2d 85 (1976), *cert den* 429 US 1104 (1977).

drive. He was not using the automobile as a motor vehicle, but as a shelter.

Fulcher had placed the automobile in gear. The automobile was not moving forward because it had come to rest in a ditch. Fulcher's inability to stay awake at the wheel or to keep his foot on the accelerator does not require a finding that he was not in "actual physical control".

We are of the opinion that the formulation of the plurality opinion on the earlier consideration of these cases will best effectuate the legislative purpose. If the defendant "is using a motor vehicle only as a shelter against the elements, and not as a motor vehicle",[20] he is not in "actual physical control" of the vehicle as a motor vehicle. We also agree with the plurality opinion that the focus of the trial and of the instruction should be on what the defendant did rather than on what he intended.[21]

The prohibition of the statute is aimed at the use of the vehicle as a motor vehicle. Actual physical control includes use short of driving, including preparing to use the vehicle as a motor vehicle. If there is evidence that the defendant was preparing to use the vehicle as a motor vehicle, the jury should be instructed that it may find that the defendant was in "actual physical control".

---

[20] *People v Pomeroy, supra,* pp 331-332.

[21] Although two New Jersey cases have held that to convict a motorist of operating a motor vehicle while intoxicated it must be shown that the motorist had an intent to move the vehicle, *State v Daly,* 64 NJ 122; 313 A2d 194; 93 ALR3d 1 (1973); *State v Sweeney,* 40 NJ 359; 192 A2d 573 (1963), the courts in Maine, *State v Sullivan,* 146 Me 381; 82 A2d 629 (1951), Massachusetts, *Commonwealth v Uski,* 263 Mass 22; 160 NE 305 (1928), Texas, *Joiner v State,* 161 Tex Crim App 526; 279 SW2d 333 (1955), and Vermont, *State v Storrs,* 105 Vt 180; 163 A 560 (1933), have held that intent is not an element of the offense. The more intoxicated a person is, the less likely it is that he would or could form the requisite intent; the question for the jury should be what did the defendant do as shown by the evidence, and not what he intended to do.

But where, as in *Pomeroy,* the theory of defense supported by evidence is that the defendant may only have been using the vehicle as a shelter and not as a motor vehicle, the jury should be instructed that if the defendant was using the vehicle only as a shelter and not as a motor vehicle he was not in actual physical control and he should be acquitted.

In *Pomeroy* the only reasonable inference from the evidence is that Pomeroy was using and had used the vehicle only as a shelter.

In *Fulcher* the judge could have inferred from the evidence that Fulcher had driven or used the vehicle as a motor vehicle.

WILLIAMS, C.J., and BOYLE, J., concurred with LEVIN, J.