Per Curiam.
 

 Defendant appeals as of right from his jury trial convictions of attempting to operate a vehicle while under the influence of intoxicating liquor or with an unlawful blood alcohol level, third offense (oun/UBAL-3d), MCL 257.625(8)(c), and attempting to operate a vehicle while his operator’s license was suspended or revoked, second or subsequent offense (DWLS-2d), MCL 257.904(3)(b). Defendant was sentenced to nine months in jail for the attempted ouiL/uBAL-3d conviction, forty-five days in jail for the attempted DWLS-2d conviction, and sixty months probation. Defendant also challenges the trial court’s denial of his motion to suppress statements made to
 
 *132
 
 the police before his arrest. We affirm the trial court’s decision on defendant’s motion to suppress, but vacate his convictions and sentences for attempted ouiL/UBAL-3d and attempted DWLS-2d.
 

 At approximately 1:30 A.M. on September 3, 1999, a greenskeeper at a Leelanau County golf course discovered a pickup truck with the engine running, parked next to a golf cart storage building in the course parking lot. The greenskeeper called 911 after his efforts to awaken the person sleeping in the front seat of the truck proved unsuccessful. Two Leelanau County deputy sheriffs responded to the scene. When they arrived, they found defendant’s truck still parked next to the golf cart storage building. The engine was still running, the lights were off, and defendant was asleep behind the steering wheel.
 

 With some difficulty, the officers awakened and questioned defendant. When defendant opened the cab door, the officers noted a strong odor of alcohol. Defendant told them that he had consumed eight beers earlier that evening. Two empty, twenty-two-ounce beer bottles were also discovered in the truck’s cab. According to the police, defendant stated that he had been stranded in the parking lot by a co-worker and another woman. He indicated that after being stranded, he drove his truck from one side of the parking lot to the location where it was parked. After defendant failed a field sobriety test,
 
 [1]
 
 he was
 
 *133
 
 arrested, given his Miranda
 
 [2]
 
 warnings, and transported to the sheriff’s department. There, the police twice measured defendant’s blood alcohol level using a Datamaster Breathalyzer. The first test indicated a blood alcohol level of 0.17, and the second, given just a few minutes later, registered 0.18.
 

 Defendant argues on appeal that the circuit court lacked subject-matter jurisdiction because MCL 257.625 and MCL 257.904 do not criminalize attempts to commit offenses. In support of his argument, defendant cites
 
 People v Briseno,
 
 211 Mich App 11; 535 NW2d 559 (1995), and
 
 People v Anderson,
 
 202 Mich App 732; 509 NW2d 548 (1993). In both cases, this Court held that application of the enhancement provision found in MCL 333.7413(2) was improper because the defendants had not been convicted of controlled substance offenses under the Public Health Code.
 
 Briseno, supra
 
 at 18;
 
 Anderson, supra
 
 at 735. Instead, the defendant in
 
 Briseno
 
 had been convicted of conspiracy to deliver marijuana,
 
 Briseno, supra
 
 at 12, and the defendant in
 
 Anderson
 
 had been convicted of attempted conspiracy to deliver cocaine,
 
 Anderson, supra
 
 at 732. In the case at hand, however, defendant was not convicted under either the attempt or conspiracy statutes,
 
 [2]
 

 [3]
 
 and defendant is not challenging the enhancement of his sentences under the applicable statutory enhancement provisions. Accordingly, the holdings of
 
 Briseno
 
 and
 
 Anderson
 
 are inapposite and nonbinding.
 

 Nonetheless, at the heart of both
 
 Briseno
 
 and
 
 Anderson
 
 is the premise that, conceptually, the
 
 *134
 
 crimes of attempting to commit and conspiracy to commit a substantive offense are separate from the substantive offense itself. Indeed, in support of its holding, the
 
 Anderson
 
 Court specifically relied on this rule of law.
 
 Id.
 
 at 734-735, citing
 
 People v Johnson,
 
 195 Mich App 571; 491 NW2d 622 (1992). It is this rule of law that defendant in the case at hand relies on to support his argument that the trial court lacked jurisdiction.
 

 We disagree with defendant that the court lacked jurisdiction. The information alleged the essential elements of the two crimes, “As long as the [information] alleges that a crime has been committed, the court has subject matter jurisdiction even if the criminal statute cannot be applied to the facts involved.” 22 CJS, Criminal Law § 157, p 188. However, we agree with defendant tfiat he should have been tried under the general attempt statute, MCL 750.92, rather than MCL 257.625. In both
 
 Briseno
 
 and
 
 Anderson,
 
 the existing statutory scheme did not proscribe either the attempt to commit the substantive offense or the conspiracy to commit the substantive offense. There was no language in the applicable enhancement provisions identifying the illegality of either behavior, nor were there separate statutes prohibiting attempted violations and conspiracies to violate the controlled substance offenses.
 
 [4]
 
 Accordingly, those defendants were tried under the general attempt and conspiracy statutes.
 

 
 *135
 
 In the case at bar, the ouil/ubal statute applicable at the time of defendant’s arrest read in pertinent part:
 

 (1) A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if either of the following applies:
 

 (a) The person is under the influence of intoxicating liquor, a controlled substance, or a combination of intoxicating liquor and a controlled substance.
 

 (b) The person has an alcohol content of 0.10 grams or more per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine. [1996 PA 491.]
 

 Had the Legislature intended to include the attempt to commit ouil/ubal in the statute, it could have written subsection 1 to read, “A person, whether licensed or not, shall not operate
 
 or attempt to operate
 
 a vehicle .. . .” It is not the job of the judiciary to write into a statute a provision not included in its clear language.
 
 People v Borchard-Ruhland,
 
 460 Mich 278, 284; 597 NW2d 1 (1999). “For all this Court knows, the Legislature considered, and rejected, including attempts in the statute.”
 
 Johnson, supra
 
 at 576.
 

 At the time of defendant’s arrest, subsection 17 of the statute did include the following provision: “A person who is convicted of an attempted violation of subsection (1), (3), (4), (5), or (6) or a local ordinance substantially corresponding to subsection (1), (3), or (6) shall be punished as if the offense had been completed.”
 
 [5]
 
 We do not believe that former subsection 17 introduces an element of ambiguity into
 
 *136
 
 the statute. This provision does not state that a person who attempts to violate the provisions of subsection l
 
 [6]
 
 is also guilty of violating the statute. Rather, it states that a conviction for attempt will be treated “as if” it were a conviction for a completed ouil/ubal for purposes of punishment of the offender. In short, former subsection 17 was addressing appropriate levels of punishment, not proscribing conduct for purposes of determining culpability. It indicated that where a person has been convicted under the attempt statute, the prescribed punishment of the attempt statute does not apply, and the offender is punished as if the crime had been completed.
 
 [7]
 

 
 *137
 
 While the punishment phase of a trial recognizes the judgment of the culpability phase, the decisions being reached and the judgments being made in these two phases of a trial are distinctly and qualitatively different. See
 
 California v Ramos,
 
 463 US 992, 1007-1008; 103 S Ct 3446; 77 L Ed 2d 1171 (1983) (observing that while in returning a conviction, the trier of fact must satisfy itself with the central issue whether the legislatively defined elements of the crime have been established, there is no similar “central issue” involved in the penalty phase); Crocker,
 
 Concepts of culpability and deathworthiness: Differentiating between guilt and punishment in death penalty cases,
 
 66 Fordham L Rev 21, 26 (1997) (“The punishment-phase determination is not a recapitulation of the guilt-phase decision . . . .”). Indeed, circumstances considered irrelevant during the culpability phase of a trial are considered when deciding the level of punishment to be imposed.
 
 United States v Watts,
 
 519 US 148, 155; 117 S Ct 633; 136 L Ed 2d 554 (1997). Accordingly, a statutory provision addressing the punishment for attempted criminal violations does not by itself create such a violation.
 

 At the time of defendant’s arrest, the statute also included an enhancement provision for repeat offenders. MCL 257.625(7). As with former subsection 17, this provision addresses punishment, not culpability.
 
 *138
 
 Additionally, this provision defined “prior conviction” to mean a conviction for
 

 a violation or attempted violation of subsection (1), (4), or (5) or former section 625(1) or (2), a local ordinance substantially corresponding to subsection (1) or former section 625(1) or (2), or a law of another state substantially corresponding to subsection (1), (4), or (5) or former section 625(1) or (2). [MCL 257.625(7)(g).]
 

 If subsection 1 already included within its bounds attempted violations, it would be superfluous for subsection 7(g) to define attempted violations within the definition of prior convictions.
 
 Borchard-Ruhland, supra
 
 at 285.
 

 Similarly, had the Legislature intended to include the attempt to commit dwls within the conduct proscribed by the version of MCL 257.904 applicable to the case at hand, it could have written subsection 1 of the statute to read, “A person whose operator’s . . . license .. . has been suspended ... and who has been notified ... of that suspension . . . shall not operate [or attempt to operate] a motor vehicle upon a highway or other place open to the general public . . . .” That it chose not to do so will be considered to be a purposeful, not an inadvertent, act. See
 
 Johnson, supra
 
 at 576.
 

 Next, defendant argues that the trial court abused its discretion in denying his motion to suppress all statements he made to the two officers before his formal arrest and the officers’ informing him of his
 
 Miranda
 
 rights. We disagree. In
 
 Berkemer v McCarty,
 
 468 US 420, 439-441; 104 S Ct 3138; 82 L Ed 2d 317 (1984), the United States Supreme Court unanimously concluded that ordinarily, routine traffic stops do not
 
 *139
 
 involve taking an individual into custody for purposes of
 
 Miranda
 
 warnings. The Court reasoned that “the usual traffic stop is more analogous to a so-called
 
 ‘Terry
 
 stop,’ see
 
 Terry v
 
 Ohio, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), than to a formal arrest.”
 
 Berkemer, supra
 
 at 439. “[T]he safeguards prescribed by Miranda,” the Court stated, “become applicable as soon as a suspect’s freedom of action is curtailed to a ‘degree associated with formal arrest.’ ”
 
 Id.
 
 at 440, quoting
 
 California v Beheler,
 
 463 US 1121, 1125; 103 S Ct 3517; 77 L Ed 2d 1275 (1983).
 

 Initially, we address defendant’s assertion that
 
 Berkemer
 
 does not apply because what occurred here was not a traffic stop. We disagree. The essential characteristics of the typical traffic stop are present in the instant case. The only difference is that defendant was not “stopped” as he was driving. Instead, the police came upon defendant as he was sleeping in his truck. We do not believe this is a significant difference that would preclude the application of
 
 Berkemer.
 
 As with the situation where the police stop someone for suspected drunk driving, the officers in this case were investigating a traffic law violation. In the abstract, in duration and atmosphere, a roadside investigation like this one is analogous to the situation in
 
 Berkemer.
 

 Typically, the police do not need to advise a driver of the individuars
 
 Miranda
 
 rights before or while they are conducting a field sobriety test.
 
 [8]
 
 Ordinarily,
 
 *140
 
 and unlike a stationhouse interrogation, the roadside questioning and detention of a driver in such a situation is brief and spontaneous.
 
 Berkemer, supra
 
 at 438. Further, the circumstances usually do not possess a threatening “police dominated” atmosphere that might make the driver feel “completely at the mercy of the police.”
 
 Id.
 
 Accordingly, the “compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present.”
 
 Miranda, supra
 
 at 478.
 

 Turning to the core of defendant’s argument, while we conclude that before his arrest a reasonable person in defendant’s place would have felt that he was seized within the meaning of the Fourth Amendment,
 
 Berkemer, supra
 
 at 436-437, we also conclude that such a reasonable person would not have believed that he was in police custody to the degree associated with a formal arrest. The testimony establishes that the questioning of defendant before the field sobriety test was brief. Defendant was not handcuffed or confined to the officers’ patrol car while he was being questioned. While defendant was told that he was not going to be allowed to leave the scene, he was not told that this was because he was going to be arrested. Rather, the officers told defendant that they needed to conclude their investigation. We conclude that these circumstances are not the functional equivalent of a formal arrest. Accordingly, we hold that the statements made by defendant before his arrest were admissible. We also reject defendant’s
 
 *141
 
 assertion that the blood alcohol results were inadmissible because they were illegally tainted.
 

 We also hold that insufficient evidence was adduced at trial to support defendant’s convictions. In order to be convicted of attempted ouil/ubal, the state must prove that a defendant specifically intended to commit ouil/ubal, and took some action in furtherance of that specific intent. See
 
 People v Thousand,
 
 465 Mich 149, 164; 631 NW2d 694 (2001). An action in furtherance of the alleged crime must be unequivocal and more than mere preparation to commit the crime.
 
 People v Jones,
 
 443 Mich 88, 100; 504 NW2d 158 (1993). While preparation “consists of making arrangements or taking steps necessary for the commission of a crime,”
 
 id.,
 
 an act in furtherance of the alleged crime “consists of some direct movement toward commission of the crime that would lead immediately to the completion of the crime,”
 
 id.,
 
 had the defendant not “fail[ed] in the perpetration, or [been] intercepted or prevented in the execution of the same . . . .” MCL 750.92. See also CJI2d 9.1. The overt acts in the furtherance of an attempt must be clear, because “so long as the equivocal quality remains no one can say with certainty what the intent of the defendant is.”
 
 People v Coleman,
 
 350 Mich 268, 278; 86 NW2d 281 (1957).
 

 The prosecution argued that defendant had taken all the preparation necessary to drive while under the influence of alcohol, but that the officers who responded to the scene had fortuitously prevented him from completing the crime. “[T]he only step he didn’t take,” the prosecution stated in its closing argument, “was going out on to the roadway.” The gist of
 
 *142
 
 the prosecution’s argument is best summed up in the following excerpt from its rebuttal closing argument:
 

 And the assumption that’s made is that after making the series of bad choices and bad decisions, that when he wakes up, and we don’t know what his blood alcohol level would have been at the time he woke up, perhaps it would have been .15, perhaps .12, perhaps .10, but now having made a series of bad choices that he’s going to make a good choice, and say, you know, I’m intoxicated still and I shouldn’t drive that seven to ten miles home to Maple City. But, see, the law doesn’t require us to wait and see if that fourth or fifth decision he makes when he wakes up is going to be a good one or not, because he already was involved in acts towards committing the crime, and that is the crime of attempt, and that’s why the officers can step in at that point and take action. We don’t have to take that gamble of him waking up at .12 and making the wrong call and getting back on the roadway. You can do something at that point to stop it, and that’s what they did. I ask you to find him guilty of those crimes that we charged, because at the point where he was, as you see him in those pictures he is guilty of the crime of attempt at that point.
 

 We hold that this evidence was insufficient to justify a rational trier of fact in finding that the essential elements of OUH/ubal were proved beyond a reasonable doubt.
 
 People v Wolfe,
 
 440 Mich 508, 513-514; 489 NW2d 748 (1992). The evidence established that defendant was intoxicated, that he was behind the wheel of his vehicle with his seatbelt fastened, that the engine of the vehicle was running, that it was in a stationary position with the transmission in either park or neutral, that the truck was in a golf course parking lot, that two empty beer bottles were found in the truck, that defendant failed a sobriety test, and that defendant had a blood alcohol level of 0.17 or 0.18. According to the officers, defendant also admit
 
 *143
 
 ted driving the truck from one side of the parking lot to the other side, parking it next to a golf cart storage building.
 

 We conclude that this evidence fails to establish that defendant possessed the requisite specific intent. The evidence does not sufficiently establish that defendant was intending to use his truck as a motor vehicle as opposed to just a shelter. The mere fact that the engine was running does not sufficiently establish that defendant had or was intending to put the vehicle in motion. As one of the arresting officers conceded, it was possible that defendant was simply keeping the truck warm while he slept.
 

 In
 
 People v Wood,
 
 450 Mich 399; 538 NW2d 351 (1995), the Michigan Supreme Court specifically overruled the precept articulated in
 
 People v Pomeroy (On Rehearing),
 
 419 Mich 441; 355 NW2d 98 (1984), that “for purposes of construing what conduct is within the meaning of ‘operate a vehicle,’ that ‘a person sleeping in a motionless car cannot be held to be presently operating a vehicle while sleeping.’ ”
 
 Wood, supra
 
 at 405, quoting
 
 Pomeroy, supra
 
 at 444. Instead, the
 
 Wood
 
 Court established the following definition for the term “operating,” as it is used in the ouil/ubal statute:
 

 Once a person using a motor vehicle as a motor vehicle has put the vehicle in motion, or in a position posing a significant risk of causing a collision, such a person continues to operate it until the vehicle is returned to a position posing no such risk.
 
 [Wood, supra
 
 at 404-405.]
 

 The evidence adduced at trial was not sufficient to support the conclusion that defendant was intending to “operate” his truck, as that term was defined in
 
 *144
 

 Wood.
 
 There was no evidence that defendant’s truck was in motion when the police discovered him. While defendant admitted driving his truck across the parking lot, he had subsequently parked it next to the storage building. Further, the evidence did not provide a basis for the jury to properly conclude that defendant’s truck was in a position posing a significant risk of causing a collision. Unlike in
 
 Wood,
 
 the lack of motion was not due to defendant’s foot being on the brake.
 
 [9]
 
 Instead, the lack of motion was due to the fact that the truck’s transmission was in either park or neutral.
 
 [10]
 

 While there is a risk that defendant might have inadvertently shifted the truck into gear while he slept, we do not believe such a risk is deemed significant, within the meaning of
 
 Wood.
 

 [11]
 

 The term “risk” refers to the probability that some type of harm or loss will occur.
 
 The American Heritage Dictionary of the English Language
 
 (1996), p 1557. We believe the adjective “significant” indicates that the risk of occurrence is more likely than not. At the very least, it indicates a risk higher than remote, speculative, or merely possible. Cf.
 
 Skinner v Square D Co,
 
 445 Mich 153, 164-165; 516 NW2d 475 (1994) (observing that for
 
 *145
 
 a causation theory to be raised from the realm of the possible to the probable, there must be evidence in the record that provides a basis for the trier of fact to reasonably infer that such a theory is not only possible, but probable). In the case at hand, there was no evidence that defendant’s transmission was in gear, so potential of movement was not immediate, or even likely while defendant was asleep.
 
 [12]
 

 We also conclude that the prosecution did not introduce sufficient evidence for the jury to find beyond a reasonable doubt that defendant took an act in furtherance of the crime. The mere fact that he was intoxicated and in his truck with the engine running does not establish that he tried and failed to drive while intoxicated. Certainly, defendant took steps that would have prepared him to commit the crime. However, while these acts were necessary for the commission of the crime had not the officers arrived on the scene, they do not establish the immediacy of the crime. Defendant may have been one step away from completing ouil/ubal, but such a step
 
 *146
 
 was not necessarily and unambiguously implied by his prior conduct.
 

 The prosecution argued below that if defendant awoke, and if he was still intoxicated at the time, the fact that he made a series of “bad choices” leads to the conclusion that he would have made another bad choice and driven the truck out of the lot. The first two premises of this argument are pure speculation. Indeed, the evidence showed that the golf course attendant failed to wake defendant and that the police had a hard time doing so when they arrived. Further, there is no way of knowing what his level of intoxication would be if he woke up because there is no evidence establishing when he would have awakened and how the passage of time would have affected his intoxication. Further, the fact that defendant made the series of choices outlined does not sufficiently establish that he would have made the decision to drive if and when defendant awoke while still under the influence of alcohol. All these choices establish is how defendant came to be in the situation he was in when discovered by the police.
 

 Below, the prosecution argued that the law does not require that the authorities wait and see if defendant would have made the decision to drive when he awoke.
 
 [13]
 
 We agree that when the police come across an individual in the same circumstances as defendant, they are not powerless to do anything. However, the acknowledgement that the police can take some action does not necessarily presuppose that any
 
 *147
 
 action taken is legitimate, or that any charge filed is valid.
 

 We also hold that the evidence was insufficient to support a conviction of attempted dwls. The statute proscribes the operation of a motor vehicle in designated areas by a person with a revoked or suspended operator’s or chauffeur’s license. MCL 257.904(1). The Legislature has not provided a definition of “operate.” It is possible to distill a definition for “operate” out of the definition provided for “operator.” However, it quickly becomes apparent on reviewing the definition of “operator” that such an analysis leads to a nonsensical result. Operator is defined to mean “eveiy person, other than a chauffeur, who is in actual physical control of a motor vehicle upon a highway.” MCL 257.36. If we were to assume that the Legislature intended that the verb “operate” were to be defined in terms of the noun “operator,” then given the exclusion of chauffeur from the definition of operator we would have to conclude that a chauffeur cannot operate a motor vehicle, as defined under the Michigan Vehicle Code. We do not believe this was the intent of the Legislature, especially given that the code’s definition of chauffeur, MCL 257.6, includes numerous uses of the word “operate.”
 

 Accordingly, we will follow the paradigm outlined in
 
 Wood,
 
 where the Court defined the term “ ‘operating’ ” “in terms of the danger the ouil statute seeks to prevent . . . .”
 
 Wood, supra
 
 at 404. The danger the dwls statute seeks to prevent is someone driving whose past driving record is so deficient that the person’s driver’s license was suspended or revoked because of the danger the person poses on the highway or other area open to the general public. For the
 
 *148
 
 same reasons set forth above, we conclude that the evidence does not support the conclusion that defendant was attempting to violate the statute when he was arrested. We also do not believe that the moving of his truck from one side of the parking lot to the other is the type of action the statute was designed to prevent.
 

 Defendant’s convictions and sentences are vacated.
 

 [1]
 

 Defendant was asked to recite the alphabet, count backwards from seventy-nine to fifty-three, walk a straight line placing his heels in contact with his toes, and hold his right leg in the air for a certain interval. Defendant was able to recite the alphabet, but unable to successfully complete the other three tasks.
 

 [2]
 

 Miranda v Arizona,
 
 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).
 

 [3]
 

 MCL 750.92 and MCL 750.157a, respectively.
 

 [4]
 

 Defendant correctly observes that in 1994 PA 220, the Michigan Legislature amended the Public Health Code by including a specific statute criminalizing attempts to violate the controlled substance part of the Public Health Code. MCL 333.7407a.
 

 [5]
 

 MCL 257.625(17).
 

 [6]
 

 Because they are not relevant to this appeal, we will not address the other subsections set forth in subsection 17.
 

 [7]
 

 In 1998, the Legislature enacted a series of bills amending sections of the Michigan Vehicle Code dealing with drunk driving offenses. As a part of this legislative package subsection 17 was deleted from MCL 257.625. Also deleted was subsection 18, which read:
 

 When assessing points and taking licensing action under this act, the secretary of state and the court shall treat a conviction of an attempted violation of subsection (1), (3), (4), (5), or (6) or a local ordinance substantially corresponding to subsection (1), (3), or (6) or a law of another state substantially corresponding to subsection (1), (3), (4), (5), or (6) the same as if the offense had been completed.
 

 In place of these subsections, the Legislature added MCL 257.204b, which, by its clear terms, applies to MCL 257.625, as well as to other provisions of the Michigan Vehicle Code:
 

 (1) When assessing points, taking licensing or registration actions, or imposing other sanctions under this act for a conviction of an attempted violation of a law of this state, a local ordinance substantially corresponding to a law of this state, or a law of another state substantially corresponding to a law of this state, the secretary of state or the court shall treat the conviction as if it were a conviction for the completed offense.
 

 (2) The court shall impose a criminal penalty for a conviction of an attempted violation of this act or a local ordinance substantially corresponding to a provision of this act in the same manner as if
 
 *137
 
 the offense had been completed. [1998 PA 347. The effective date of this statute was October 1, 1999.]
 

 Even as amended, the Michigan Vehicle Code continues to treat violations of the code (including outl)
 
 as if
 
 they were completed offenses for purposes of punishment, but it does not specifically proscribe and include attempted violations within the bounds of the code.
 

 [8]
 

 We are nbt establishing a bright-line rule for all ouiNubal roadside investigations. The importance of examining the circumstances involved cannot be overstressed. See
 
 Pennsylvania v Bruder,
 
 488 US 9; 109 S Ct 205; 102 L Ed 2d 172 (1988). As the
 
 Berkemer
 
 Court observed, “If a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him ‘in custody’ for practical purposes, he
 
 *140
 
 ■will be entitled to the Ml panoply of protections prescribed by Miranda.”
 
 BerJcemer, supra
 
 at 440.
 

 [9]
 

 In
 
 Wood,
 
 the defendant was found passed out in his van at a McDonald’s drive-through window.
 
 Wood, supra
 
 at 402. The automatic transmission was in drive, and the only thing keeping the vehicle from moving was the defendant’s foot resting on the brake pedal.
 
 Id.
 

 [10]
 

 There was no testimony offered at trial that the truck was in gear, park, or neutral when the officers came upon defendant. However, on cross-examination, one of the two officers did testify that at no time did defendant ever attempt to put the truck in gear. We believe the clear implication of this is that the truck was not in gear, and was resting in either park or neutral.
 

 [11]
 

 Further, by definition, such an inadvertent act would not satisfy the specific intent element of the crime.
 

 [12]
 

 The
 
 Wood
 
 Court did not state that the
 
 Pomeroy
 
 Court erred in reversing the convictions of the two defendants involved in the two consolidated cases in issue in
 
 Pomeroy.
 
 Instead, the
 
 Wood
 
 Court specifically limited its holding to overruling what it characterized as an “over generalized” assumption relied on by the
 
 Pomeroy
 
 Court. Specifically, the
 
 Wood
 
 Court held that
 
 Pomeroy
 
 was “overruled to the extent it holds, for purposes of construing what conduct is within the meaning of ‘operate a vehicle,’ that ‘a person sleeping in a motionless car cannot be held to be presently operating a vehicle while sleeping.’ ”
 
 Wood, supra
 
 at 405, quoting
 
 Pomeroy, supra
 
 at 444.
 

 One of the defendants in
 
 Pomeroy
 
 had been found asleep in a car legally parked in front of a bar.
 
 Pomeroy, supra
 
 at 444. “The car’s standard transmission was in neutral and the motor and heater were on . ...”
 
 Id.
 
 We believe that this defendant would not be considered to be operating his vehicle under the
 
 Wood
 
 definition.
 

 [13]
 

 The implication of this argument is that defendant had not yet made such a decision, and thus seems to concede the lack of specific intent. We will assume that was not a concession being made by the prosecution.