*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0165p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

BEVERLY NETTLES-NICKERSON,
            *Plaintiff-Appellant,*


        *v.*                                   No. 11-1253


JOHN FREE; ANDREW MCCREADY; GREGORY
HARRIS,
            *Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:10-cv-281—Robert J. Jonker, District Judge.

Decided and Filed: June 1, 2012

Before: DAUGHTREY and ROGERS, Circuit Judges; ZOUHARY, District Judge.[*]

_____

**COUNSEL**

**ON BRIEF:** Andrew Patrick Abood, ABOOD LAW FIRM, East Lansing, Michigan,
for Appellant. Michael S. Bogren, PLUNKETT COONEY, Kalamazoo, Michigan, for
Appellees.

_____

**OPINION**
_____

ROGERS, Circuit Judge. Plaintiff Beverly Nettles-Nickerson was arrested after
police officers found her intoxicated, sitting in the driver's seat of her running, but
legally parked, Hummer. Nettles-Nickerson was charged with operating a vehicle while
intoxicated, but the state trial court dismissed her case after it concluded that she was not
"operating" her Hummer as that term is defined under Michigan law. Nettles-Nickerson

_____

[*]The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio,
sitting by designation.

1

then sued her arresting officers in federal court, arguing, among other things, that they unconstitutionally detained her without reasonable suspicion and arrested her without probable cause. The district court, however, held that the officers had qualified immunity. Nettles-Nickerson now appeals that ruling. Since there was a reasonable basis to believe that Nettles-Nickerson was operating her Hummer while intoxicated, and was therefore violating Michigan law, the district court properly determined that the officers had qualified immunity.

On the evening of May 8, 2009, Nettles-Nickerson visited the Tap Room, a neighborhood bar in Okemos, Michigan. Although it is unclear how much alcohol she consumed there, Nettles-Nickerson does not dispute that she was too impaired to drive home. After paying her check, Nettles-Nickerson grabbed her carry-out container and left the bar. David Williams, another Tap Room customer who was dining on the outdoor patio, saw Nettles-Nickerson walking in a zig-zag motion through the parking lot toward her car, lose her footing, and fall to the ground. According to Williams, Nettles-Nickerson got up, stumbled to her Hummer, opened the driver's side door, got into the driver's seat, and started the car. Williams also saw the car's tail lights come on and brake lights illuminate. Believing that it was not in anyone's interest for Nettles-Nickerson to be driving, Williams called 9-1-1 and told the dispatcher about the situation.

Police Officers John Free, Andrew McCready, and Gregory Harris arrived on the scene, and Williams directed Officer Free to the Hummer. Officer Free approached the car, which he noticed was running but still in park, and saw Nettles-Nickerson sitting in the driver's seat. Officer Free announced his presence and, although Nettles-Nickerson initially appeared to be sleeping, she immediately opened her eyes and made eye contact. Officer Free observed that Nettles-Nickerson's eyes were watery and bloodshot and that she smelled of intoxicants. Officer Free then asked Nettles-Nickerson to step out of her car and perform a variety of field sobriety tests, and she complied. According to Officer Free, Nettles-Nickerson could not correctly recite the entire alphabet and had difficulty maintaining her balance during a simple walk-and-turn test. Officer Free then

administered two preliminary breath tests (PBTs), but both failed to register. Officer Harris administered a third PBT, which revealed that Nettles-Nickerson had a blood alcohol content of 0.165, well over the legal limit. After consulting with his fellow officers, Officer Free arrested Nettles-Nickerson, without a warrant, for operating a vehicle while intoxicated in violation of MICH. COMP. LAWS § 257.625.

The state trial court, however, dismissed the charge, finding that Nettles-Nickerson was not "operating" her Hummer as that term is defined under Michigan law. The Michigan Department of State made a similar finding in Nettles-Nickerson's license restoration proceedings. Accordingly, Nettles-Nickerson's criminal case was closed and her license was not suspended.

Unsatisfied, Nettles-Nickerson sued Officers Free, McCready, and Harris in federal court. Nettles-Nickerson argued, among other things, that the officers unconstitutionally detained her without reasonable suspicion and arrested her without probable cause. The district court, however, granted the officers' motion for summary judgment, holding that they were entitled to qualified immunity because Nettles-Nickerson did not have "a clearly established constitutional right to be free from detention and eventual arrest while sitting, intoxicated, in the driver's seat of a running vehicle that is legally parked." The district court determined that a reasonable officer could have concluded that Nettles-Nickerson was "operating" her Hummer as that term is statutorily defined. The district court also reasoned that while Michigan case law could be read to reach a different conclusion, the case law was sufficiently unclear to allow a reasonable officer to believe that Nettles-Nickerson was "operating" her vehicle. Nettles-Nickerson now appeals that ruling.

Officers Free, McCready, and Harris are entitled to qualified immunity because it would not have been clear to a reasonable police officer that detaining and arresting Nettles-Nickerson was unlawful. Qualified immunity is warranted even if a constitutional violation has occurred if the right violated was not clearly established, *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)), and this court may proceed directly to that inquiry

in appropriate cases.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).  Even if we assume that the police lacked probable cause to arrest Nettles-Nickerson under Michigan law, Officers Free, McCready, and Harris were nonetheless entitled to qualified immunity because there was a reasonable basis to believe that Nettles-Nickerson was operating her Hummer while intoxicated and was therefore violating Michigan law.

Michigan makes it a crime for a person who is intoxicated to "operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles."  MICH. COMP. LAWS § 257.625(1).  Since there is no dispute that Nettles-Nickerson was intoxicated, the only question is whether she was "operating" her Hummer.  Michigan's legislature defined "operating" as "being in actual physical control of a vehicle."  MICH. COMP. LAWS § 257.35a.  Here, a reasonable officer could have concluded that Nettles-Nickerson was in actual physical control of her Hummer.  She had opened the driver's side door, gotten into the driver's seat, started the car, turned the tail lights on, and pressed the brake pedal, and she sat behind the steering wheel while the vehicle was running.  Moreover, no one else was in the car and nothing impeded Nettles-Nickerson's ability to move the car.  Since a reasonable officer relying on the plain language of the relevant statute could have concluded that Nettles-Nickerson was operating her Hummer while intoxicated, the district court properly determined that Officers Free, McCready, and Harris were entitled to qualified immunity.

It is true that prior to 1995, the Michigan Supreme Court had held that "a person sleeping in a motionless car cannot be held to be presently operating a vehicle while sleeping."  *People v. Pomeroy*, 355 N.W.2d 98, 99 (Mich. 1984).  In *People v. Wood*, however, the Michigan Supreme Court explicitly overruled this broad holding, and on the contrary held that "operating" should be defined such that "[o]nce a person using a motor vehicle as a motor vehicle has put the vehicle . . . in a position posing a significant

risk of causing a collision, such a person continues to operate it until the vehicle is returned to a position posing no such risk." 538 N.W.2d 351, 353 (Mich. 1995). The court applied the definition to include the defendant in *Wood*. In that case,

> police officers found Wood unconscious in his van at a McDonald's drive-through window . . . . Wood was slumped forward, with his head resting on the steering wheel. The vehicle's engine was running, and the automatic transmission was in drive. Wood's foot, which rested on the brake pedal, kept the vehicle from moving. Wood had a twenty-dollar bill in his hand, and a Budweiser beer between his legs. He smelled of alcohol and, when the police awakened him, appeared confused.

*Id.* at 352.

It was perfectly reasonable for a police officer fully familiar with this precedent to arrest Nettles-Nickerson. By getting into the driver's seat of her Hummer, starting the car, turning the tail lights on, pressing the brake pedal, and being able, at any moment, to drive away, Nettles-Nickerson had put her Hummer in a position posing a significant risk of causing a collision.

To be sure, an argument could be made that *Wood* was distinguishable because Nettles-Nickelson's car was parked in a legal parking space, and may not have just been driven while she was intoxicated. Such an argument apparently persuaded the state trial court to dismiss Nettles-Nickerson's criminal case and the Michigan Department of State to refuse to suspend her driver's license. Indeed, some subsequent unpublished decisions by the intermediate Michigan appellate courts provide some support for the distinction. *People v. Burton*, 651 N.W.2d 143 (Mich. Ct. App. 2002); *People v. Andres*, No. 258280 2006 WL 448811 (Mich. Ct. App. Feb. 23, 2006). Those cases, however, were themselves distinguishable from Nettles-Nickerson's case. In *Burton*, the defendant was asleep and the officers had some difficulty waking him after they found him parked in a golf course parking lot in the middle of the night. *Burton*, 651 N.W.2d at 145. And in *Andres*, the vehicle involved was not even running. *Andres*, 2006 WL 448811, at *1.

Reasonable lawyers' arguments could be made either way as to whether Nettles-Nickerson's situation was closer to that in the Michigan Supreme Court case of *Wood* or that of the two court of appeals cases.[1] Under well-recognized principles of qualified official immunity, the police officers cannot be required to pay damages merely because they anticipated the law incorrectly. Instead, the law must be clearly established before there can be such liability. *See Pearson*, 555 U.S. at 232; *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The requirement that the law must be clearly established extends as well to state law where one interpretation of a state law is necessary to establish a federal constitutional violation. *See King v. Ambs*, 519 F.3d 607, 612-13 (6th Cir. 2008); *Nails v. Riggs*, 195 F. App'x 303, 311-12 (6th Cir. 2006). In this case, moreover, the police officers commendably consulted with each other before executing the arrest. This is a paradigm case for qualified official immunity.

The judgment of the district court is affirmed.

---

[1] Indeed, in a case decided after Nettles-Nickerson's arrest, the Michigan Court of Appeals held that a vehicle was operated where the automobile was put in gear, but was legally parked and had not moved. *See People v. Longeway*, No. 300493 2012 WL 933597 (Mich. Ct. App. March 20, 2012).