# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

MOHAMED ELFECHTALI,

Defendant-Appellee.

UNPUBLISHED
November 3, 2015

No. 322665
Alger Circuit Court
LC No. 2011-001977-FC

Before: MARKEY, P.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's grant of defendant's post-conviction motion for a directed verdict on the charge of attempted kidnapping-child enticement, MCL 750.350. We affirm.

## I. BACKGROUND

This case arises out of a brief roadside encounter between defendant and AH, a minor at the time. Defendant, a Canadian who was 40 years old at the time of the encounter, had attended job interviews in Saskatchewan and was returning by way of the United States to his home in Montreal. AH was 12-years old at the time and was walking the short distance home from her grandmother's house. Wet, heavy snow was falling, and AH was not wearing a hat or gloves. Defendant was driving east through Munising when he saw AH. He pulled over, rolled down his window, motioned AH over to his car, and asked her if she knew where Canada was. After AH said she did not know, defendant introduced himself by name, extended his hand for a handshake, and said "let's be friends." After AH shook hands, defendant said, "Why don't you get in the car," and turned to move some papers from the passenger seat. AH refused to get into defendant's car, and defendant allegedly said, "No, I'm not going to kidnap you." Neither said anything else to the other, and after checking for traffic, AH crossed the street and went home, while defendant drove off. Recounting the same incident at trial, defendant said he did not recall saying, "let's be friends," telling AH to get in the car, or making the comment about not kidnapping her.

AH's stepfather said that when she got home, AH was crying, upset, and uncharacteristically hysterical, claiming that a man in a black car had tried to get her into his car. Her stepfather called the chief of police, and a bulletin was issued instructing law enforcement personnel to be on the lookout for a car and driver matching defendant's description.

-1-

Meanwhile, defendant continued driving east, stopping at a restaurant to ask directions and at a gas station to get gas. State troopers subsequently stopped defendant and informed him that they were investigating allegations of inappropriate contact that had occurred earlier in Munising between a 12-year-old girl and a man whose description defendant matched. Defendant denied having had contact with a young girl, and agreed to accompany the officers back to Munising to clear up everything.

During the course of an approximately three-and-a-half-hour police interview, defendant admitted asking someone for directions, but repeatedly said that, because of her size, he thought the person he talked to was a woman of at least 22 years of age, not a girl. He also admitted introducing himself and making an offer of friendship, and said he asked the woman to get into his car so she could show him the road. He admitted that he tried to keep the conversation going, hoping it would lead to a consensual sexual experience like the one he had the night before with a woman he met in a bar. Defendant became increasingly distressed as the interview progressed, and repeatedly pleaded for help. At one point, defendant was told that he was not from this country, that "[t]his can be a bad deal for you," and that "I've got an agent out there who's itching to come in and work on this." Defendant replied that if someone was going to come in and hit him he would agree to whatever the girl said. Defendant was then told that he should tell the truth. The interview ended with defendant's arrest. The interview was audio-taped and videotaped, and was shown to the jury.

At trial, defendant moved for a directed verdict after the prosecution had presented its proofs. The court denied the motion and the trial proceeded to verdict, with the jury finding defendant guilty of one charge each of attempted kidnapping-child enticement, MCL 750.350, MCL 750.92, and accosting a minor for immoral purposes, MCL 750.145a. Defendant renewed his motion for a directed verdict of acquittal. MCR 6.419(C). The trial court denied the motion with regard to the accosting charge, MCL 750.145a, but granted it with regard to the attempted kidnapping-child enticement charge, MCL 750.350.

## II. ANALYSIS

The people argue on appeal that the trial court erred in granting defendant's motion for a directed verdict on the charge of attempted kidnapping-child enticement because the evidence presented at trial was sufficient to allow the jury to find that the essential elements of the crime had been established beyond a reasonable doubt. We disagree.

This Court reviews a trial court's grant of a directed verdict de novo, considering the evidence in the light most favorable to the prosecution. *People v Hammons*, 210 Mich App 554, 556; 534 NW2d 183 (1995). "[A] directed verdict is inappropriate where a rational trier of fact could find that the essential elements of the crime charged were proven beyond a reasonable doubt." *Id*.

### A. Evidence of Specific Intent

MCL 750.350 states in relevant part:

A person shall not maliciously, forcibly, or fraudulently lead, take, carry away, decoy, or entice away, any child under the age of 14 years, with the intent to

-2-

detain or conceal the child from the child's parent or legal guardian…. MCL 750.350.

Attempted kidnapping is a specific intent crime. *People v Stapf*, 155 Mich App 491, 497; 400 NW2d 656 (1986). A specific intent crime requires a particular criminal intent beyond the act done. *People v Maynor*, 256 Mich App 238, 240; 662 NW2d 468 (2003). Specific intent "may be inferred by the jury from circumstantial evidence," *People v Fields*, 64 Mich App 166, 174; 235 Mich 95 (1975), or from "the facts and circumstances established beyond a reasonable doubt," *People v Brown*, 159 Mich App 428, 431; 407 NW2d 21 (1987). "Because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient." *People v McRunels*, 237 Mich App 168, 181; 603 NW2d 95 (1999).

The crucial issue here is whether the prosecution met its burden of proving that defendant intended to kidnap AH with the specific intent of concealing her from her parents beyond a reasonable doubt. The prosecution's theory was that defendant was not lost but was looking for female sexual partners on his way back home. In support of this position, the prosecution submitted that defendant had worked for several years as a cab driver in Montreal, and argued that this fact made it unlikely that he was lost in a town the size of Munising. However, there is no logical connection between being a cab driver in a large city and knowing how to navigate the streets and roads of a small town. The witnesses from the restaurant and gas station both testified that defendant acted like a person who was lost. Nevertheless, the prosecutor interprets their testimony as evidence of defendant's successful efforts to "groom witnesses, i.e., act in a manner that would cause people to remember him while planting the idea that he was lost." Considering the evidence in the light most favorable to the prosecution, *Hammons*, 210 Mich App at 556, a jury could not find beyond a reasonable doubt that defendant was not confused about the route he was supposed to take. There was nothing to refute defendant's testimony that it was his first time through Munising, it was late on a dreary November afternoon, it was snowing, he had passed the same location twice, and his GPS was giving him impossible directions. In light of this, his claim that when he called AH over to his car he was intent on getting directions seems plausible and at least raises some question sufficient to create a reasonable doubt about when and whether, under the circumstances, defendant would have formed the intent to kidnap AH with the specific intent of concealing her from her parents.

The prosecution proposed that if the jurors rejected defendant's contention that he thought AH was a woman in her early-20s, they could infer that he had the specific intent to conceal her from her parents. Supporting such an inference is the testimony of AH and her mother implying that, apart from her height and weight, AH presented like other 12-year old girls. AH testified that she was wearing a pink Columbia fleece, black sweat pants, and pink and gray "winter kids' boots." AH's mother testified that AH may have been a little taller and a little heavier than other 12-year olds, but she liked to ride bikes and watch Hannah Montana with her friends, and she possessed the maturity and vocabulary typical of other 12-year olds. However, AH was not engaging in these childlike activities when defendant saw her; she was walking down the sidewalk alone, late in the afternoon on a November day. And even though AH possessed the level of maturity, vocabulary, and disposition typical of a 12-year old, the encounter between AH and defendant was brief, their conversation short and simple, and AH testified that she had maintained a calm demeanor throughout, despite being scared on the inside. There was some indication that AH could look 18 years old. A photograph taken near in time to

the event and admitted into evidence reasonably suggests that AH looks older than her years. In short, testimony other than defendant's, as well as the photograph of AH, raise a fair, reasonable doubt that AH presented as a child subject to parental control.

Although knowledge of the victim's age is not an element in kidnapping-child enticement, MCL 750.350, the Legislative intent of "the child enticement statute [was to] specifically address[] the social evil of luring children away from their homes and families by force or fraud." *People v Rollins*, 207 Mich App 465, 470; 525 NW2d 484 (1994). Defendant's statements during his recorded interview that he hoped for a consensual sexual encounter and that he thought AH was a young woman, coupled with evidence that she appeared much older, gives rise to a fair doubt that, whatever defendant's secret intent, it did not involve consideration of kidnapping and concealing AH from her parents. The facts, as presented, give rise to reasonable doubts regarding whether defendant formed the specific intent that is a necessary element in the crime of kidnapping-child enticement. MCL 750.350; *Kuchar*, 225 Mich App at 77. For these reasons, we find that the trial court did not err in granting defendant's post-conviction motion for a directed verdict of acquittal on the charge of kidnapping-child enticement. MCL 750.350.

## B. Evidence of an Overt Act

To prove the crime of attempted kidnapping-child enticement, the evidence must not only show the defendant's specific intent to commit kidnapping-child enticement, but also that the defendant committed an overt act going beyond mere preparation toward completion of the crime. *Stapf*, 155 Mich App at 494. The "action in furtherance of the alleged crime must be unequivocal and more than mere preparation to commit the crime." *People v Burton*, 252 Mich App 130, 141; 651 NW2d 143 (2002). Our Supreme Court has explained as follows that, for an act to be considered an attempt, it must relate unequivocally to the crime at issue:

> "It is that quality of being equivocal that must be lacking before the act becomes one which may be said to be a commencement of the commission of the crime, or an overt act, or before any fragment of the crime itself has been committed, and this is so for the reason that, so long as the equivocal quality remains no one can say with certainty what the intent of the defendant is." As stated in *United States v Ford* (DC NC), 34 F 26, 27, "the intention of the actor can alone be clearly ascertained by the movements which he had made to complete his design." [*People v Coleman*, 350 Mich 268, 277-278; 86 NW2d 281 (1957), quoting *People v Miller*, 2 Cal 2d 527, 531-53; 42 P 2d 308 (1935).]

The Court recommended the following test for determining whether an act remained equivocal:

> If the acts of the accused, taken by themselves, are unambiguous, and cannot, in reason, be regarded as pointing to any other end than the commission of the specific crime in question, then they constitute a sufficient *actus reus*. In other words, his acts must be *unequivocally referable* to the commission of the specific crime. They must, as the late Sir John Salmond said, 'speak for themselves.' If the example may be permitted, it is as though a cinematograph film, which had so far depicted merely the accused person's acts without stating what was his

intention, had been suddenly stopped, and the audience were asked to say to what end those acts were directed. If there is only one reasonable answer to this question then the accused has done what amounts to an 'attempt' to attain that end. If there is more than one reasonably possible answer, then the accused has not yet done enough. [*Id.* at 278, quoting Turner, *Attempts to Commit Crimes*, 5 Cambridge LJ, 230, 237, 238.]

The prosecution argued that defendant's instruction to AH to get into his car was an overt act leading directly to completion of the crime of kidnapping-child enticement. The prosecution contends that, had AH gotten into defendant's car, he would have driven off and the crime would have been complete, and that the only thing preventing completion of the crime was AH's failure to cooperate. Accepting the prosecution's version of events as true, the "film" that results from applying this test shows defendant motioning AH over to his car on a snowy afternoon, chatting with her briefly, introducing himself and shaking her hand, saying to her to get into his car, and moving some papers off the car's passenger seat. AH refuses and leaves; defendant drives off. Under the test recommended by *Coleman*, the question is whether defendant's acts up to the point he drove off necessarily "speak for themselves." *Id.* at 278. Considering that AH was walking in the same direction that defendant was driving, that it was snowy and windy, and AH was wearing neither hat nor gloves, the "film" reasonably supports defendant's claim that he was just offering her a ride. The prosecution argues that defendant's admissions during his police interview support the contrary view that defendant's invitation was an overt act in furtherance of his intent to take AH away and to conceal her from her parents.

Applying *Coleman*, we conclude that defendant's actions, "taken by themselves," were equivocal, in that they could be seen as an offer of a ride to someone going in the same direction on a windy, snowy late afternoon, or just as likely, overt acts directed toward kidnapping-child enticement. In order for leading, taking, carrying, decoying or enticing away to fall under MCL 750.350, it has to be done maliciously, fraudulently, or forcibly. Standing alone, defendant's acts are ambiguous as to his intent. Consequently, even had we concluded that there was sufficient evidence to find that defendant acted with the necessary specific intent, we would nonetheless conclude that defendant's action of inviting AH into his car and clearing his seat, without more, gives rise to a reasonable doubt that the invitation was an overt act directed toward attempting to kidnap AH. *Id.* at 277-278.

Affirmed.

/s/ Jane E. Markey
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan

-5-