# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

GUY RICHARD BOWERS,

      Defendant-Appellant.

UNPUBLISHED
July 19, 2018

No. 339265
Hillsdale Circuit Court
LC No. 16-403943-FH

Before: HOEKSTRA, P.J., and MURPHY and MARKEY, JJ.

PER CURIAM.

Defendant appeals by right his convictions for operating/maintaining a methamphetamine laboratory in violation of MCL 333.7401c(2)(f) and possession of methamphetamine in violation of MCL 333.7403(2)b(*i*). We affirm.

On August 25, 2016, Trooper Britt Owen of the Michigan State Police stopped defendant in his pickup truck for a malfunctioning headlight. Upon initial contact, defendant informed Trooper Owen that he did not have insurance on his truck. Trooper Owen immediately called a tow truck to come get defendant's truck. Trooper Owen recognized defendant's name because it had surfaced in reference to a different methamphetamine investigation. After speaking with another trooper and while waiting for the tow truck, Trooper Owen continued to question defendant about methamphetamine. Defendant said that he bought pseudoephedrine pills and lithium batteries about a week earlier for the purpose of manufacturing methamphetamine and that he traded the pseudoephedrine pills and batteries to someone else in return for useable methamphetamine. Defendant also said that his wife bought pseudoephedrine pills the night before to also trade for useable methamphetamine. Trooper Owen arrested defendant after defendant made the statements about his wife and his purchasing methamphetamine ingredients and trading them for useable methamphetamine.

After arresting defendant, Trooper Owen passed the information on to Sergeant Leslie Keane of the Adrian Police Department and RHINO.[1] Sergeant Keane looked up defendant in

---

[1] RHINO is a multi-jurisdictional task force of several different police departments that primarily focuses on narcotics enforcement.

the "pseudoephedrine logs," and she determined that he bought 10 boxes of pseudoephedrine in 2016. She then "flagged" defendant so that she would be notified if he purchased more pseudoephedrine. Sergeant Keane was notified in September and October that defendant and his wife had bought more pseudoephedrine. She conducted surveillance on defendant's house after each notification. She observed a known associate of defendant, who also purchased unusually high amounts of pseudoephedrine, leaving defendant's house carrying a cooler, which she stated methamphetamine manufacturers used to hide the manufacturing tools. She also observed defendant and others making frequent trips between the house and the garage and spoke with defendant at his house. Defendant admitted that he purchased pseudoephedrine and traded it for useable methamphetamine.

On October 4, 2016, Sergeant Keane obtained a search warrant for defendant's property. RHINO agents then searched defendant's garage and house. They found ingredients and tools for manufacturing methamphetamine as well as burnt tin foil that indicated use of methamphetamine. Defendant was convicted after a jury trial.

On appeal, defendant argues that the evidence gathered from his garage and house should have been suppressed because it was gathered based on a search warrant that was supported by statements he made to Trooper Owen during the August roadside stop. Defendant alleges that Trooper Owen's questioning during that stop was a police custodial interrogation, and thus, he was required to inform defendant of his *Miranda* warnings, which he did not do. We disagree.

We review "a trial court's factual findings in a suppression hearing for clear error." *People v Jenkins*, 472 Mich 26, 31; 691 NW2d 759 (2005). We review for an abuse of discretion the trial court's decision to admit or exclude evidence. *People v Kowalski*, 492 Mich 106, 119; 821 NW2d 14 (2012). "An abuse of discretion results when a circuit court selects an outcome falling outside the range of principled outcomes." *Id*. (citation omitted). We review constitutional questions and issues of law underlying evidentiary rulings de novo. *Id*.

The United States Supreme Court in *Miranda v Arizona*, 384 US 436, 478-479; 86 S Ct 1602; 16 L Ed 2d 694 (1966), announced that a person must be informed when subjected to police custodial interrogation that he has the "right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning . . . ." Unless a person was given these *Miranda* warnings before police custodial interrogation, "no evidence obtained as a result of interrogation can be used against him." *Id*. at 479.

The critical inquiry in this case is whether Trooper Owen's conversation with defendant was a custodial interrogation. To determine whether a person was in custody, "the initial step is to ascertain whether, in light of the objective circumstances of the interrogation, a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *People v Elliott*, 494 Mich 292, 307; 833 NW2d 284 (2013)(citation, brackets, and quotation marks omitted). In making such a determination, a court must "examine all of the circumstances surrounding the interrogation," including, "the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Id*.

"[A] motorist detained for a routine traffic stop or investigative stop is ordinarily not in custody within the meaning of *Miranda*." *People v Steele*, 292 Mich App 308, 317; 806 NW2d 753 (2011)(citations omitted). Interaction between the police and motorists during a traffic stop usually do not rise to the level of custodial interrogation because they are more public and are not inherently coercive as may be the case with a stationhouse interrogation. *Id*. Nonetheless, the *Miranda* warnings are required as soon as a person's freedom of action is curtailed to "a degree associated with formal arrest" and that person is to be questioned further. *People v Burton*, 252 Mich App 130, 139; 651 NW2d 143 (2002) (quotation marks and citation omitted).

Trooper Owen testified that defendant's statements about his methamphetamine use were made during "general conversation." We conclude that a reasonable person would feel free to terminate a general conversation with a police officer, even while waiting on the roadside for their vehicle to be towed. We conclude further that defendant was free to terminate the conversation with Trooper Owen in this case. Trooper Owen stated that he was still conducting an investigation when he asked defendant about methamphetamine and that he had not made the decision yet to arrest defendant.

When considering the location of the questioning, the statements made during the questioning, and the lack of restraints used during the questioning, we conclude that defendant's freedom of action was not curtailed to a degree associated with formal arrest, *Burton*, 252 Mich App at 139, until he was actually placed in handcuffs and put in Trooper Owen's vehicle for transport to the jail. Accordingly, it was not until that point that defendant was entitled to the warnings outlined in *Miranda*.

Therefore, we hold that the trial court did not clearly err in finding that there was not a crucial nexus between what may have transpired in August and what transpired in October, and it did not abuse its discretion in denying defendant's motion to suppress the evidence.

We affirm.

/s/ Joel P. Hoekstra
/s/ William B. Murphy
/s/ Jane E. Markey