# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LOYD DONALD OSBORNE,

Defendant-Appellant.

UNPUBLISHED
May 29, 2018

No. 336716
Eaton Circuit Court
LC No. 16-020079-FH

Before: MURRAY, C.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of one count of operating while intoxicated, MCL 257.625(1)(a), and one count of resisting and obstructing a police officer, MCL 750.81d(1). The trial court sentenced him as a fourth habitual offender, MCL 769.12, to concurrent prison terms of 11 to 25 years for operating while intoxicated and 5 to 15 years for resisting and obstructing. We affirm.

At trial, eyewitness testimony established that on January 29, 2016, at around 11:00 p.m., defendant was driving erratically in the parking lot of his apartment complex. A fellow resident called the police after she heard the sound of squealing tires and observed defendant strike either a pole or tree, circle around in "donuts," and drive in and out of parking spaces. The witness observed defendant get out of his vehicle and exhibit signs of extreme intoxication before he reentered his vehicle and continued to drive.

Upon his arrival, Sheriff's Deputy Nicklaus Newton observed a vehicle parked out of place, which fit the description he received when dispatched. Defendant's vehicle was "parked half on the sidewalk, in the fire lane, half in the parking lot" with what appeared to be fresh damage on the front driver's side bumper. Newton performed a data search of defendant's vehicle license plate, and continued his investigation by following leads from bystanders directing him toward defendant's apartment. When Newton encountered defendant, he noted that defendant matched the description of the person at issue that he had received when he was dispatched, and he observed defendant's bloodshot and glassy eyes, slurred speech, unsteady stance, and the odor of alcohol on defendant's breath.

Newton testified that defendant admitted to driving "approximately 30 minutes" prior to their encounter, admitted to consuming "two to three beers," and identified the vehicle as his. At some point, defendant walked outside to the parking lot with Newton, at which point Newton

-1-

observed defendant's unsteady walk. After defendant refused Newton's request to participate in a field sobriety test and a breathalyzer test, Newton placed defendant under arrest, and defendant began resisting. Once defendant was secured, Newton obtained a search warrant and then a blood draw, which revealed that defendant's blood alcohol level was .233 grams per 100 milliliters of blood.

## I. BLOOD ALCOHOL EVIDENCE

Defendant first argues that the trial court should have granted his motion to suppress the evidence of his blood alcohol level because Newton lacked probable cause to arrest defendant, and because the search warrant authorizing the blood draw was not supported by probable cause. We disagree.

This Court reviews a trial court's findings of fact in a suppression hearing for clear error. *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009). However, the trial court's ultimate decision on a motion to suppress is reviewed de novo. *People v Rizzo*, 243 Mich App 151, 155; 622 NW2d 319 (2000); *Hyde*, 285 Mich App at 436. This Court also reviews "de novo whether the Fourth Amendment was violated and whether an exclusionary rule applies." *Hyde*, 285 Mich App at 436.

The Fourth Amendment to the United States Constitution protects the right of the people "against unreasonable searches and seizures," and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." US Const, Amend IV.; See Const 1963, art 1, § 11. "Probable cause exists when the facts and circumstances would allow a reasonable person to believe that the evidence of a crime or contraband sought is in the stated place." *People v Waclawski*, 286 Mich App 634, 698; 780 NW2d 321 (2009). Probable cause must be rooted in facts presented to the issuing magistrate under oath or affirmation. *Id*. Probable cause may also be founded on hearsay, MCL 780.653; *People v Harris*, 191 Mich App 422, 425; 479 NW2d 6 (1991), and the affiant's experience is relevant to its establishment. *Waclawski*, at 698. Additionally, "[t]he affidavit should be signed by the affiant . . . ." *Id*.

Under MCL 780.653,

> [t]he judge or district court magistrate's finding of reasonable or probable cause shall be based upon all the facts related within the affidavit made before him or her. The affidavit may be based upon information supplied to the complainant by a named or unnamed person if the affidavit contains 1 of the following:
>
> (a) If the person is named, affirmative allegations from which the judge or district court magistrate may conclude that the person spoke with personal knowledge of the information.
>
> (b) If the person is unnamed, affirmative allegations from which the judge or district magistrate may conclude that the person spoke with personal

knowledge of the information and either that the unnamed person is credible or that the information is reliable.

The exclusionary rule often requires trial courts to exclude unlawfully seized evidence in a criminal trial. *People v Goldston*, 470 Mich 523, 528; 682 NW2d 479 (2004). However, when a search warrant is determined to be invalid, the seized items need not be suppressed if the police officers obtained the warrant from a magistrate and executed it in good faith. *United States v Leon*, 468 US 897, 919-921; 104 S Ct 3405; 82 L Ed 2d 677 (1984); *Goldston*, 470 Mich at 541.

"A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment." *People v Champion*, 452 Mich 92, 115; 549 NW2d 849 (1996). The "arresting officer must possess information demonstrating probable cause to believe that an offense has occurred and that the defendant committed it." *Id*.; MCL 764.15. "Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed." *Champion*, 452 Mich at 115, quoting *Brinegar v United States*, 338 US 160, 175; 69 S Ct 1302, 1310-1311, 93 L Ed 1879 (1949).

Here, Newton's testimony indicates that he was responding to a call reporting erratic driving, and that he was given a description: a "shorter male with a black hoodie and jeans" driving a silver or gray Pontiac. Upon his arrival, he observed the vehicle matching the description, parked partially on a sidewalk and partially in the fire lane, next to a no-parking sign, and with damage to the front driver's side bumper. Based on these observations, it would have been reasonable to conclude that an impaired driver had been operating this vehicle given the manner in which it was parked, the damage, and the fact that it fit the description given in a report of erratic driving.

Newton discovered that the vehicle was registered under defendant's name, and he followed what appear to have been two additional leads from bystanders directing him to defendant's apartment. When he encountered defendant, he observed that defendant matched the description he received, and observed extremely clear symptoms of intoxication (e.g., unsteady feet, swaying, a strong smell of alcohol, slurred speech, and bloodshot, glassy eyes). Defendant then identified his vehicle and admitted to consuming alcohol, but refused a field sobriety test and a breathalyzer test.

When Newton arrested defendant, he had information demonstrating probable cause to believe that the offense of operating while intoxicated (MCL 257.625(1)(a)) had occurred and that the defendant committed it. *Champion*, 452 Mich at 115. Newton had knowledge of the reported erratic driving, he observed what appeared to be fresh damage on defendant's vehicle, and the vehicle was parked in a manner suggesting that someone impaired had been operating it. Moreover, he prudently followed bystander leads that ultimately led him to defendant's apartment, where he observed defendant's level of intoxication. Finally, defendant and his vehicle both matched the descriptions Newton received. Newton's testimony indicates a set of factual circumstances sufficient to create the belief in a person of reasonable caution that defendant had committed the offense of operating while intoxicated. *Champion*, 452 Mich at 115.

The search warrant authorizing the blood draw was likewise supported by probable cause and comported with MCL 780.653. The affidavit states that Newton believed that defendant was the driver of a motor vehicle involved in a crash based on the following:

> Caller stated she witnessed a silver Pontiac driving in the parking lot, a place generally accessible to motor vehicles, spin its tires and hit a tree. Caller stated an older white male wearing a black hoodie exited the vehicle and stumbled when walking. Upon arrival I saw a silver Pontiac with fresh damage to the front parked in front of building. Made contact with the registered owner, [defendant], in his apartment. [Defendant] fit the description given and said the silver Pontiac is his, he parked it there and had been drinking.

> I believe that the named driver was under the influence of alcohol and/or controlled substances based on:

> Strong odor of intoxicants coming from [defendant's] breath, watery bloodshot eyes, statements that he had been drinking, and he stumbled, and was unbalanced when he walked.

The basis for probable cause was properly set forth in facts presented to the issuing magistrate under oath or affirmation, and the facts alleged were sufficient to allow a reasonable person to believe that evidence of an operating while intoxicated offense would be present in defendant's blood sample. *Waclawski*, 286 Mich App at 698.

In sum, defendant's arrest was supported by probable cause, and the search warrant authorizing defendant's blood draw was likewise supported by probable cause. Therefore, the trial court's determination that the blood draw results were admissible at trial was not error.

## II. SUFFICIENCY OF THE EVIDENCE

Next, defendant argues that insufficient evidence was adduced at trial to support both of his convictions. We disagree.

A claim of insufficient evidence is reviewed de novo. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). In a criminal case, the test for sufficiency of the evidence is whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecutor, could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Nowak*, 462 Mich 392, 399; 614 NW2d 78 (2000); *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). The Court should not interfere with the factfinder's role of determining the weight of evidence or the credibility of witnesses. *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012). A prosecutor need not negate every reasonable theory of innocence, but must only prove his own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defendant provides. *Nowack*, 462 Mich at 400.

**A.**     **Operating while intoxicated**

Defendant was convicted of operating while intoxicated under MCL 257.625(1)(a), which provides:

>     (1) A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if the person is operating while intoxicated. As used in this section, "operating while intoxicated" means any of the following:

>     (a) The person is under the influence of alcoholic liquor, a controlled substance, or other intoxicating substance or a combination of alcoholic liquor, a controlled substance, or other intoxicating substance.

Here, the prosecution presented evidence that defendant operated his vehicle in the parking lot of his apartment complex, i.e., a "place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles," MCL 257.625(1), and that he was intoxicated while operating, i.e., "under the influence of alcoholic liquor," MCL 257.625(1)(a).

A witness testified that she had a clear view of the parking lot while she was on her balcony, and that she observed defendant strike a pole with his vehicle while he was "[d]oing donuts," driving in reverse "extremely fast," and pulling in and out of parking spots. She recounted that when defendant got out of his vehicle, he "could barely walk, could barely make it to the mailboxes," that "he walked in a full circle to get to the mailbox," and was not walking in a straight line. She further indicated that she observed defendant begin operating the vehicle again before she called 911. Newton's testimony likewise indicates that defendant was intoxicated while he was driving. His testimony at trial indicated that defendant "said he was driving a vehicle approximately 30 minutes before I made contact with him," and that defendant admitted to consuming alcohol. Moreover, Newton made several observations of intoxication symptoms when he encountered defendant, and the jury heard expert testimony that defendant's blood alcohol level after his arrest was .233 grams per 100 milliliters of blood. See MCL 257.625(1).

While the evidence did not establish that defendant *must* have been intoxicated at the time of operation, viewing the evidence in the light most favorable to the prosecutor, a rational trier of fact could find that the essential elements of MCL 257.625(1)(a) were established beyond a reasonable doubt. *Reese*, 491 Mich at 139; *Nowack*, 462 Mich at 399. Defendant could have asserted that he engaged in binge drinking after driving while in his apartment and was not intoxicated during the actual operation of the vehicle; the expert testimony falls short of indicating that defendant could only have reached such a high blood alcohol level over the course of a certain time period. Actual testimony, however, indicated defendant's intoxication while he was operating his vehicle in the apartment parking lot, and viewing all of the evidence as a whole, a rational trier of fact could conclude that defendant was intoxicated while operating his vehicle.

There was testimony that when he first got out of his vehicle, defendant "walked in a full circle to get to the mailbox," "didn't seem like he could find his way back to the vehicle . . . very easily" and was not walking in a straight line. Testimony further indicated that police arrived within minutes of the 911 call. Thus, the jury could have found beyond a reasonable doubt that defendant was in fact intoxicated while he was driving based on eyewitness testimony, the expert testimony indicating defendant's blood alcohol level, and Newton's testimony. Any doubt that could be attributed to lay witness's ability to discern intoxication was negated by the fact that it was subsequently determined that defendant was extremely intoxicated. Moreover, any doubt that defendant was intoxicated while he was operating would not have been reasonable because it would defy all logical inferences that a rational trier of fact would draw from the testimony presented.

Defendant relies on *People v Burton*, 252 Mich App 130; 651 NW2d 143 (2002), for the general proposition that because no police officer witnessed defendant operate his vehicle, there was insufficient evidence upon which he could be convicted of operating while intoxicated. In *Burton*, 252 Mich App at 131, the defendant was convicted of attempting to operate under the influence, MCL 257.625, and attempting to operate with a suspended license, MCL 257.904. This Court pertinently held that insufficient evidence was adduced at trial because the state failed to prove that the defendant specifically intended to commit the offense of operating while intoxicated, and that he acted in furtherance of that specific intent. *Id*. at 141. This Court explained:

> The evidence established that defendant was intoxicated, that he was behind the wheel of his vehicle with his seatbelt fastened, that the engine of the vehicle was running, that it was in a stationary position with the transmission in either park or neutral, that the truck was in a golf course parking lot, that two empty beer bottles were found in the truck, that defendant failed a sobriety test, and that defendant had a blood alcohol level of 0.17 or 0.18. According to the officers, defendant also admitted driving the truck from one side of the parking lot to the other side, parking it next to a golf cart storage building.
>
> We conclude that this evidence fails to establish that defendant possessed the requisite specific intent. The evidence does not sufficiently establish that defendant was intending to use his truck as a motor vehicle as opposed to just a shelter. The mere fact that the engine was running does not sufficiently establish that defendant had or was intending to put the vehicle in motion. As one of the arresting officers conceded, it was possible that defendant was simply keeping the truck warm while he slept. [*Id*. at 142-143.]

The evidence in *Burton* concerned the defendant's specific intent to operate his vehicle while under the influence; it did not concern whether defendant had actually completed the offense of operating under the influence because he was not charged with, nor convicted of, the completed offense. See *id*. at 131, 142-143. Conversely, the evidence presented here concerned whether defendant was intoxicated, and whether he had already driven while he was intoxicated. Accordingly, *Burton* does not support defendant's argument that there was insufficient evidence adduced at trial to support the conviction for operating while intoxicated.

-6-

**B. Resisting and obstructing**

Defendant was convicted of resisting and obstructing a police officer under MCL 750.81d(1), which pertinently provides that

> an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

The prosecution presented evidence that defendant resisted and obstructed both Newton, a police officer, MCL 750.81d(7)(b)(*i*), and an emergency medical service person, MCL 750.81d(7)(b)(*ix*), and that he knew or should have known that they were performing their duties, MCL 750.81d.

Newton's testimony indicates that after securing defendant in handcuffs and escorting him to the patrol car, "he started to pull away from me and started to resist and become verbally abusive" and attempted "to move his body weight in a way to pull off my grip of my hand that I had on his arm." Newton's testimony also indicated that he was wearing his full police uniform and that he was using his fully marked patrol car while conducting the arrest. He further testified that after he warned defendant of resisting and obstructing, defendant continued to resist, and that while escorting him to the police car, "he pulled away really hard, to try to get away or get out of my – my custody." The jury also viewed portions of footage from Newton's body camera and patrol car dashboard camera.

Moreover, the jury heard testimony that defendant resisted the blood draw after he was arrested. Newton testified that defendant "resisted the blood draw" by "not holding his arm still enough for the EMT to be able to . . . draw the blood." There was additional testimony that defendant would not hold still during the blood draw, and that "[h]e completely refused and was pretty aggressive about it." A finding that defendant did not resist and obstruct would not have been reasonable because it would have contradicted all the evidence presented pertinent to resisting and obstructing.

Defendant relies on *People v Moreno*, 491 Mich 38; 814 NW2d 624 (2012), for the proposition that he was privileged to resist Newton's unlawful arrest. In *Moreno*, the Supreme Court held that MCL 750.81d(1) did not abrogate the common law right to resist an unlawful arrest, and that "[c]onsistently with the common-law rule . . . the prosecution must establish that the officers' actions were lawful." *Id.* at 41, 51-52. Defendant's reliance on *Moreno*, however, does not support his argument that he was convicted of resisting and obstructing with insufficient evidence because, as discussed above, the prosecution established that defendant's arrest for operating while intoxicated was lawful (i.e., that it was supported by probable cause).

III. SENTENCING ERROR

Defendant next argues that he received an unreasonable sentence. We disagree.

Courts are not bound by the legislative sentencing guidelines, as they are only advisory. *People v Lockridge*, 498 Mich 358, 399; 870 NW2d 502 (2015). A sentencing court may depart from the sentencing guidelines range without stating substantial and compelling reasons to justify the departure, and the court's sentence will be reviewed for reasonableness. *Id*. at 392. The court must articulate on the record its reasons for imposing its sentence, and such is sufficient if the court expressly relies on the guidelines or if it is clear from the context of the court's remarks that the court relied on them. *People v Conley*, 270 Mich App 301, 312-313; 715 NW2d 377 (2006). While the court must score and consider the sentencing guidelines, the court is not compelled to impose a minimum sentence within the calculated range. *Lockridge*, 498 Mich at 365. A court may not impose a minimum that exceeds two-thirds of the statutory maximum. MCL 769.34(2)(b); *People v Harper*, 479 Mich 599, 617; 739 NW2d 523 (2007).

Defendant was convicted under MCL 750.81d(1), "a felony punishable by imprisonment for *not more than 2 years . . . .*" (Emphasis supplied). Defendant was also convicted under MCL 257.625(1)(a). Subsection (9) of the operating under the influence statute provides:

> (9) If a person is convicted of violating subsection (1) or (8), all of the following apply:
>
> * * *
>
> (c) If the violation occurs after 2 or more prior convictions, regardless of the number of years that have elapsed since any prior conviction, the person is guilty of a felony and must be sentenced to pay a fine of not less than $500.00 or more than $5,000.00 and to either of the following:
>
> (*i*) Imprisonment under the jurisdiction of the department of corrections for *not less than 1 year or more than 5 years*. [MCL 257.625(9)(c)(*i*) (emphasis supplied).]

Under MCL 769.12(1), when "a person has been convicted of any combination of 3 or more felonies . . . and that person commits a subsequent felony within this state, the person shall be punished upon conviction of the subsequent felony" in accord with the following provisions:

> (b) If the subsequent felony is punishable upon a first conviction by imprisonment for a maximum term of 5 years or more or for life, the court . . . may sentence the person to imprisonment for life or for a lesser term.
>
> (c) If the subsequent felony is punishable upon a first conviction by imprisonment for a maximum term that is less than 5 years, the court . . . may sentence the person to imprisonment for a maximum term of not more than 15 years. [MCL 769.12(1)(b) and (c).]

Here, defendant was sentenced as a fourth habitual offender, subjecting him to enhanced sentencing under MCL 769.12. With respect to the operating while intoxicated conviction, defendant received 11 to 25 years. Defendant's criminal record indicates four prior felony convictions for operating while intoxicated between 1999 and 2011. Therefore, defendant was

-8-

subject to a statutory maximum sentence of five years, MCL 257.625(9)(c)(*i*), and the court was thus authorized to impose a life sentence or less, MCL 769.12(1)(b).

Turning to the resisting and obstructing conviction, MCL 750.81d(1), defendant received 5 to 15 years. Resisting and obstructing is a crime punishable upon a first conviction by imprisonment for a maximum term that is less than 5 years, and because defendant had been convicted of a combination of 3 or more felonies or attempts to commit felonies, the court was authorized to impose a maximum sentence of 15 years. MCL 769.12. The five year minimum sentence does not exceed two-thirds of the statutory maximum of 15 years, i.e., it does not exceed 10 years. MCL 769.34(2)(b).

At sentencing, the court noted that defendant had seven prior felonies, and 23 prior misdemeanors, including seven drinking and driving offenses, of which five were felonies. The court further noted that defendant was on parole for OUIL when he committed the instant offenses. The court opined that the guidelines were not high enough given defendant's history and explained that defendant is a danger to society, and that he was likely to continue to commit crimes upon release. We find that defendant's sentence is reasonable because his criminal history demonstrates a propensity to continue driving under the influence regardless of whether he goes to prison for the offense, and every time he operates under the influence, he endangers the public.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that he received ineffective assistance of counsel. We disagree. We first note that these claims are unpreserved because defendant failed to raise them in a timely filed motion for a new trial, *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000) or move for a *Ginther*[1] hearing, *People v Hurst*, 205 Mich App 634, 641; 517 NW2d 858 (1994). Accordingly, our review is limited to "errors apparent on the record." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008).

To establish ineffective assistance of counsel, "the defendant must show that counsel's representation fell below an objective standard of reasonableness," in addition to establishing "that the deficient performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687-88; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "[D]efendant must overcome the strong presumption that his counsel's action constituted sound trial strategy under the circumstances." *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). With respect to prejudice, the defendant must establish that counsel's deficiency "was so prejudicial to him that he was denied a fair trial." *Id*. Accordingly, the defendant must establish that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

different." *Id*. at 302-303. Further, counsel is not required to argue frivolous or meritless motions, and the failure to do so does not amount to ineffective assistance of counsel. *People v Gist*, 188 Mich App 610, 613; 470 NW2d 475 (1991).

Defendant first claims that he received ineffective assistance of counsel when his trial attorney informed him during his preliminary examination that in order to be accepted into a sobriety assistance program, he was required to waive the preliminary examination and attend a meeting with the prosecutor. Next, defendant claims that he received ineffective assistance of counsel because his attorney held status conferences without defendant being present. Defendant fails, however, to advance any comprehendible allegations of objectively deficient performance on behalf of his initial trial counsel that are rooted in facts found in the record. Moreover, his allegations of prejudice are supported neither in fact nor law. Accordingly, we reject his claims that he received ineffective assistance of counsel.

Affirmed.

/s/ Christopher M. Murray
/s/ Deborah A. Servitto
/s/ Mark T. Boonstra